[Civ. No. 3431.  Third Appellate District.—March 8, 1928.]

SUN-MAID RAISIN GROWERS OF CALIFORNIA (a Corporation), Appellant, v. PAUL A. MOSESIAN AND SON, INCORPORATED (a Corporation), Respondent.

Harry M. Creech and Harris, Johnson, Willey & Griffith for Appellant.

Barbour & Kallas for Respondent.

PLUMMER, J.—Action by plaintiff to recover a certain sum alleged to be due as liquidated damages by virtue of a contract entered into between plaintiff's assignor and the defendant. The defendant had judgment and the plaintiff appeals.

On or about the twenty-fifth day of April, 1923, the Sun-Maid Raisin Growers, a corporation, the assignor of the plaintiff herein, and the defendant entered into a written agreement pertaining to the marketing of certain crops of raisins to be produced upon the lands of the defendant. The Sun-Maid Raisin Growers, a corporation, was a corporation organized for profit, having a paid-up capital stock. The plaintiff in this action is a co-operative association organized for the marketing of raisin grapes.

The contract entered into between the Sun-Maid Raisin Growers, a corporation, and the defendant, among other things provided as follows:

"The buyer agrees to properly manufacture and pack said raisins and thereafter sell them as rapidly as possible and pay the proceeds over to the sellers named in this and similar contracts, according to the quantities and varieties of raisins (or if Bleached Thompsons or Bleached Sultanas then according to the quantities and grades thereof) received from the respective sellers, first deducting any advance or advances previously made to them and each seller's *pro rata* share of all losses and expenses of the buyer incurred in its operations hereunder, including any loss incurred in handling and reselling the crop of 1922, and seven per cent on the capital stock of the buyer outstanding on

December 31st in each year; and provided further that at the option of the buyer such payment of such excess may be made in capital stock of the buyer or in 7% preferred capital stock of the Sun-Maid Growers Association of Delaware, at par, fully paid up, at the rate of not over $4.00 per ton of raisins received from the seller by the buyer and the balance in cash.''

The contract further provided that the raisins purchased from the defendant should be pooled and sold with raisins of like quality purchased from other persons with whom the Sun-Maid Raisin Growers Corporation held similar contracts. There was also a provision in the contract permitting assignment by the corporation to a co-operative association in the event of the organization of such an association under the laws of the state of California. The paragraph in the contract relative to stipulated damages is as follows: ''The parties hereto fully understanding and admitting that it will be impracticable or extremely difficult to fix the actual damages to the buyer, which will result from the breach of this contract by the seller, hereby expressly agree and stipulate that in the event of the seller's neglect, failure or refusal to deliver to the buyer the raisins purchased hereunder, the seller will pay to the buyer the sum of three cents per pound for all raisins covered hereby, and so undelivered, as liquidated damages for such breach.''

The trial court found that it was not impracticable to ascertain the damages suffered, and no damages having been proven, judgment was entered for the defendant.

The record shows that the appellant simply introduced a contract, and there rested its case on the question of damages without making any effort whatever to show the circumstances surrounding and attendant upon the execution thereof, upon which the court might base a finding of liquidated damages, the contention of the appellant being that the contract in and of itself is sufficient without further proof.

Before considering the contention of the appellant we may properly state that so far as the record discloses this is not a case which involves either the morale or prestige of a co-operative association. In a number of the cases involving the question of liquidated damages, where a number in a co-operative association has failed and neglected to deliver

4

his crop, in allowing liquidated damages the standing of the co-operative association is considered, its prestige, the effect upon its members, if any of the members declined to perform the obligations imposed upon them by the co-operative contracts. The agreement in this case was not made with a co-operative association. It was made simply with a corporation organized for profit. There is nothing in the complaint, and not a scintilla of evidence in the record showing that the defendant in this action is or was, at any time during the period involved, a member of the plaintiff co-operative association. So far as this action is concerned it is simply one where a co-operative association is seeking damages from an outsider for refusing to be bound by the terms of a contract made with a corporation organized for profit, of which contract the plaintiff has become the assignee. The only evidence in the record as to membership by the defendant in the plaintiff co-operative association is found in the following sentence taken from the assignment under which the plaintiff holds, which excludes any idea of membership. It is as follows: "but second party shall not be deemed, by reason of this instrument or of anything contained herein, or on any other ground, or for any other reason, to have accepted any of said applications for membership." This is in reference to the contract entered into between the plaintiff's assignor and the defendant, wherein the defendant was contracting for the handling of his grapes by the corporation in the manner set forth herein by the excerpt taken from said contract and the agreement of the defendant to deliver his grapes for a certain period of time. In fact, there is nothing in the record before us which brings this case within the decisions relative to controversies between nonprofit co-operative associations and members thereof.

While a number of questions are suggested by a reading of the record, only one needs to be considered, and that is the failure of plaintiff to make out a case justifying the allowance of liquidated damages. There appears nothing in the record showing that the plaintiff was doing any business, handling raisins, expending money, incurring overhead expense, or that the failure by the defendant to deliver raisins would in any manner affect the standing or prestige of the corporation, or that the plaintiff was performing any

of the acts such as appear in the record of the cases having to do with co-operative associations in this state. One of the most recent is that of the *California Bean Growers' Association* v. *Rindge Land & Nav. Co.*, 199 Cal. 168 [47 A. L. R. 904, 248 Pac. 658], which illustrates fully how proof was made, laying the foundation for the enforcement of a clause in contracts relating to liquidated damages. ■

The law is well settled in this state that the allowance of liquidated damages or the enforcement of a clause in a contract providing for liquidated damages is a matter of pleading and proof. There must be proof of the surrounding and attendant circumstances connected with the execution of the contract, from which the court may make its findings of the impracticability of fixing damages otherwise.

In *Pacific Factor Co.* v. *Adler*, 90 Cal. 110 [25 Am. St. Rep. 102, 27 Pac. 36], we find the following, which has been the accepted rule ever since the decision in that case. It is there said: "Whether a contract is such that from the nature of the case it would be impracticable or extremely difficult to fix the actual damages sustained by a breach thereof, is a question of fact which must be determined in each particular case; and for the purpose of determining this question, the court must examine the attendant and surrounding circumstances under which the contract was entered into, as well as the terms of the contract itself. Parties cannot, by their arbitrary agreement, preclude such examination by the court or avoid the provisions of the statute." (Citing *Patent Brick Co.* v. *Moore*, 75 Cal. 205 [16 Pac. 890]; *Eva* v. *McMahon*, 77 Cal. 472 [19 Pac. 872].)

In *Dyer Bros. Iron Works* v. *Central Iron Works*, 182 Cal. 588 [189 Pac. 445], the court, in considering a contract providing for liquidated damages, and the application of sections 1670 and 1671 of the Civil Code, in relation thereto, ruled as follows: "Whether or not the damages would be impracticable or extremely difficult of precise appraisal, is largely a question of fact. A provision in a contract which fixes the amount of the damages in defense of a breach is void unless the parties seeking to recover the sum agreed upon shows by pleading and proof that the provision is within the single exception to the general rule." (Citing a number of cases.) And then continues: "The complaint in the case at bar, after enumerating the circumstances

wherein the plaintiff sustained loss occasioned by defendant's breach, alleges, that at all times it was and is impracticable and extremely difficult to fix the amount of damages or loss to plaintiffs or to prove the same. This allegation, which, of course, is admitted by the demurrer, renders the complaint sufficient for the purpose of bringing the case within the exception provided by section 1671 of the Civil Code. . . . Whether plaintiffs will be able to sustain this allegation of proof is immaterial upon a consideration of the merits upon the demurrers." And as said in *Stark* v. *Shemada,* 187 Cal. 785 [204 Pac. 214], "even where the parties to the contract for liquidated damages have, by a written stipulation, agreed that it would be impracticable and extremely difficult to fix the actual damages, if the facts do not support such stipulation, it cannot be enforced."

In the case of *McInerney et al.* v. *Mack,* 34 Cal. App. 153 [166 Pac. 867], the rule is a little more fully set forth. It is there said: "In such an action as this, as a matter of defense (this was a case where the defendant relied upon a contract fixing liquidated damages), defendant must show to the court by proper pleadings and competent proof that the contract falls within the law permitting liquidated damages. This does not depend entirely upon the contract itself. Facts must be pleaded and proven from which the court can say as a matter of law that the contract for liquidated damages is valid because from the nature of the case it would be impracticable or extremely difficult to fix the actual damages. The mere stipulations of the contract are insufficient for this purpose." (A number of cases are there cited supporting the rule stated.) The rule which we have just quoted is again set forth and affirmed in the case of *Hanlon Dry Dock etc. Co.* v. *McNear,* 70 Cal. App. 204, 215 [232 Pac. 1002, 1007]. The following decisions likewise support the rule that proof must be made, and that the contract itself is not sufficient: *Poultry Producers etc. Co.* v. *Murphy,* 64 Cal. App. 450 [221 Pac. 962], citing the case to which we have referred (64 Cal. App.), on page 455 [221 Pac. 964]; *Anaheim C. F. Association* v. *Yeoman,* 51 Cal. App. 759 [197 Pac. 959]; *Thomas* v. *Anthony,* 30 Cal. App. 217 [157 Pac. 823]; *Los Angeles Olive Growers' Association* v. *Pacific Surety Co.,* 24 Cal. App. 95 [140 Pac. 295]. See, also, 8 Cal. Jur., p. 853. There is a marked distinction between

cases such as the one with which we are dealing where the defendant entered into a contract for the sale of grapes with a corporation organized for profit, and one where the contract exists between members of a co-operative organization. The life and continuance of the latter corporation is a matter of consideration in fixing damages in the event of a breach of any of its members to comply with his contract or the by-laws or articles of incorporation of the co-operative association. In the case at bar we are simply dealing with an ordinary contract for the sale of grapes. By the very terms of the instruments which we have referred to herein, the defendant was not accepted as a member of the co-operative association, and there is no proof in the record whatever of such membership ever having been established. This lays the foundation which makes applicable the following quotations from the different decisions having to do with the ordinary sale of personal property and those pertaining to co-operative associations.

In the case of *Anaheim C. F. Assn.* v. *Yeoman, supra,* the court, in considering the elements which parties would have in view in contracting for liquidated damages, uses the following language: ''The association was organized for the purpose of the better handling of citrus fruits through the co-operative and joint effort of its members. From the nature of the organization and the statement of its purposes as found in its articles and by-laws, it can be fairly and reasonably inferred that by the co-operation of its members, mutual advantages would accrue to all through greater economy in handling and shipping and the securing of more advantageous marketing facilities. These results would be dependent, directly upon the performance by the members of their agreement to deliver their fruit into the hands of the association for the purposes declared. Defendant sought to show at the trial that the damage which would accrue to the association by reason of any of its members failing or refusing to market their fruit through the association could be easily and exactly ascertained, and that such damage would consist wholly of a proportionate amount of overhead operating cost. By the line of questioning pursued, it was made clear that the association would suffer an actual monetary loss by reason of the failure of defendant to deliver his fruit at the

association packing house for market, as he had agreed to do, but in the very nature of the case we do not think that such damage should be the only damage considered to have been suffered by the plaintiff. Other elements have already been suggested. The existence and life of the association itself depended upon its being furnished fruit to dispose of in the public market. A reduction in the amount of fruit so handled would not only tend to increase the overhead cost to the nontransgressing members, but, we may assume, to some extent affect the prestige and standing of the association as a marketing concern." And as said in *California Bean Growers' Association* v. *Rindge Land & Navigation Co.*, 199 Cal. 168 [47 A. L. R. 904, 248 Pac. 658] : "If growers refuse to deliver their beans to the association, it may find it impossible to fulfill its own contracts for the sale of beans and thereby become liable in damages to the buyers thereof. If large quantities of beans are withheld by the growers and sold directly by them, the market for beans may be undermined to the detriment of all members of the association. Such conduct on the part of the growers may well imperil the very life of the association or destroy it and defeat the purposes for which it was organized." Nothing of this kind appears in the record before us, the plaintiff electing to stand upon the contract and the assignment thereof without offering a scintilla of proof to show a situation such as was presented in the two cases just referred to.

Sections 3308 and 3354 of the Civil Code lay the basis for determining the damages, if any, suffered by the plaintiff in this case, section 3308 of the Civil Code, providing: "The detriment caused by the breach of a seller's agreement to deliver personal property, the price of which has not been fully paid in advance, is deemed to be the excess, if any, of the value of the property to the buyer over the amount which would have been due to the seller under the contract if it had been fulfilled." And section 3354 of the Civil Code, specifies that "in estimating the damages, except in certain cases, the value of the property to the buyer or owner thereof, deprived of its possession, is deemed to be the price at which he might have bought an equivalent thing in the market nearest to the place where the property ought to have been put into his possession, and at such time after the breach of duty upon which his right to dam-

ages is founded as would suffice, with reasonable diligence, for him to make such a purchase.''

The case of *May* v. *Hunt, Hatch & Co.,* 75 Cal. App. 283 [242 Pac. 735], is a case directly in point involving the breach in the sale of grapes, and there the court said: ''Where a buyer paid part of the purchase price on seller's breach, buyer was entitled under section 3308, Civil Code, to recover the excess of value of property to him, over amount which would have been due seller had contract been fulfilled,'' etc. In the case at bar nothing was paid on account of the purchase price, and therefore section 3354 of the Civil Code, is made applicable. In the recent case of *S. L. Jones & Co.* v. *Bond,* 191 Cal. 551 [217 Pac. 725], where the circumstances disclosed a breach to deliver property agreed to be sold, the court said: ''The measure of the damage caused by the breach of an agreement to sell personal property not paid for, is deemed to be the excess, if any, of the value of the property to the buyer over the amount which would have been due to the seller under the contract if it had been fulfilled, and in estimating such damages, the value of the property to the buyer is to be deemed the price for which he might have bought an equivalent thing in the market nearest to the place where the property ought to have been put into his possession, Civil Code Sections 3308 and 3354.'' The opinion in that case then proceeds to set forth the manner in which proof was made.

This being a case involving a breach for the sale of personal property in not making delivery, as agreed, and not involving anything further, nothing is presented which would authorize our holding that the court was in error in making the finding attacked herein.

Appellant relies upon the case of *Wright* v. *Rodgers,* 198 Cal. 137 [243 Pac. 866]. An examination of the opinion in that case shows that it is not an authority for appellant's contention and in nowise limits the application of the rule which we have set forth and which is supported by the decisions cited, and also others from which we might quote. The case of *Wright* v. *Rodgers,* turns upon section 3387 of the Civil Code relative to presumptions attendant upon a breach of contract for the transfer of real property. That section itself, when it comes to dealing with a transfer of personal property, is an authority against the contention of

the appellant in this case. As to real property the case of *Wright* v. *Rodgers* holds, in accordance with the section, that adequate compensation cannot be presumed, but that when a breach of an agreement to transfer personal property is under consideration, that adequate compensation can be made. Which necessitates, of course, proof that the contract for liquidated damages, in order to be enforceable, must, by the evidence introduced by the party relying thereon, show the impracticability of determining actual damages. The appellant not having introduced any proof upon which the trial court could have based a finding awarding liquidated damages, it follows that the judgment must be and the same is hereby affirmed.

Hughes, J., *pro tem.*, and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on April 7, 1928, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 7, 1928.

All the Justices concurred.