[Civ. No. 42362. Second Dist., Div. Five. June 20, 1974.]

HERBERT A. COOK et al., Plaintiffs and Respondents, v.
KING MANOR AND CONVALESCENT HOSPITAL,
Defendant and Appellant.

**COUNSEL**

Roland Maxwell, Myron H. Salisian and Douglas D. Graham for Defendant and Appellant.

Lackman & Lackman and Lawrence H. Lackman for Plaintiffs and Respondents.

**OPINION**

**LORING, J.**[*]—Plaintiffs Herbert A. Cook and Joan D. Cook (hereafter collectively Cooks) entered into a written contract with defendant King Manor and Convalescent Hospital, a California corporation (King Manor) to purchase from King Manor a fee title interest, and a leasehold interest in certain real property and a convalescent hospital constructed thereon (hereafter Hospital) at Santa Ana, California. Paragraph 1(a) of the contract required the payment of $25,000 to be paid outside of escrow upon the opening of the escrow referred to in the agreement. Paragraph 31 of the agreement provided:

---

[*]Assigned by the Chairman of the Judicial Council.

"31. LIQUIDATED DAMAGES: Buyer recognizes that Seller will spend time and effort in connection with the sale of this property; that Seller's property will be removed from the market during the existence of this agreement; that Seller is limiting the operation of its hospital in accordance with paragraph 8, *supra,* and agree that it is extremely difficult and impractical to determine the amount and extent of detriment to Seller if Buyer should fail to carry out this agreement through no fault of Seller. Therefore the parties agree that if the Buyer fails to perform, that Seller shall retain the sum of $25,000.00 paid to him as liquidated damages. Such damages shall be in lieu of any other monetary relief. Seller shall pay out of such sum all escrow and title costs, if any."

Cooks filed an action against King Manor to recover the $25,000 on a common count for money had and received. King Manor answered, pleading the contract as a defense and asserted the right to keep the $25,000. King Manor also cross-complained for attorney's fees. King Manor filed an amended cross-complaint for attorney's fees and for damages of between $25,000 and $75,000 for breach of contract.

After non-jury trial the court made findings of fact and conclusions of law finding that Paragraph 31 was not a valid "Liquidated Damage" clause but was an illegal penalty or forfeiture provision; that no evidence had been introduced to prove that it was impracticable or difficult to determine actual damages. The court found that defendant's actual damage for breach of contract was the sum of $9,989.85, and rendered judgment in favor of Cooks for $15,010.15. Judgment was entered accordingly from which King Manor appeals.

## CONTENTS

Appellant's contentions may be summarized as follows:

1. The court's decision is contrary to law.

2. The contractual provision regarding the $25,000 down payment was consideration for a limitation of plaintiffs' liability and may not be considered a forfeiture since the parties are bound by the language of the agreement.

3. Plaintiffs are estopped to deny the validity of the liquidated damage clause.

4. If the clause is invalid, cross-complainant is entitled to additional damages.

5. Defendant is entitled to attorney's fees.

## FACTS

Prior to any negotiations with Cooks the board of directors of King Manor adopted a resolution that if anyone purchased the hospital they must make a non-refundable deposit of $25,000, which King Manor would use to get the hospital ready to turn over to the purchaser. In August 1968, Cooks offered to purchase the hospital. King Manor designated the selling price of the hospital at $2,121,000-$2,021,000 net to King Manor. Cooks made an offer to purchase which provided for $25,000 deposit in escrow. A draft of contract was submitted by Cooks' lawyer to that effect. King Manor requested that the contract provide for payment of $25,000 outside of escrow. Cooks' lawyer redrafted the contract accordingly which did not contain Paragraph 31. A letter of intent submitted by King Manor dated September 19, 1968, provided that the $25,000 paid out of escrow should be forfeited, after payment of escrow charges, if the escrow failed through the fault of Cooks. On September 19, 1968, the board of directors of King Manor approved the letter of intent. Thereafter counsel for the Cooks and King Manor met to review and discuss the proposed contract of sale and particularly the matter of the $25,000 to be paid out of escrow.

The final form of contract was drafted in the office of Cooks' attorney by the attorneys for both parties. The attorney for King Manor suggested the language for Paragraph 31. The first draft was prepared by him in his handwriting. It apparently was copied from a C.E.B. book which counsel for King Manor had with him. The court found: ". . . no evidence to prove the impractability [*sic*] or difficulty to have fixed actual damages for breach of contract at the time of signing any of the subject purchase agreements was received." King Manor does not question the accuracy of this finding or contend that there was evidence offered to the contrary.

## DISCUSSION

King Manor takes the position here (which apparently it also took in the court below, see finding above-referred to) that the parol evidence rule precluded the court from going behind the language of Paragraph 31 to determine the true intent of the parties or whether there was a factual basis for the recitation that it was "extremely difficult and impracticable to determine the amount and extent of detriment to Seller if Buyer should fail to carry out this agreement through no fault of Seller." King Manor contends here, and did in the court below, that the parties having agreed to the language of Paragraph 31 are bound by its terms.

If appellant's position were tenable no contractual provision for forfeiture or penalty would ever be invalid if it were simply denominated

"Liquidated Damages" and contained the requisite "magic words." Such is not the law. Civil Code section 1670 reads as follows:

"Every contract by which the amount of damage to be paid, or other compensation to be made, for a breach of an obligation, is determined in anticipation thereof, is to that extent void, except as expressly provided in the next section."

The "next section" Civil Code section 1671 reads as follows: "The parties to a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."

In *Caplan* v. *Schroeder,* 56 Cal.2d 515 [15 Cal.Rptr. 145, 364 P.2d 321], plaintiffs agreed to buy certain real property from defendants in Orange County at a price of $323,000 ($2,200 per acre) through a six-month escrow. Under the agreement plaintiffs delivered outside of escrow a $15,000 note which was paid by plaintiffs. The escrow was opened but not completed. The contract provided that the $15,000 was given as consideration ". . . for SELLERS entering into this Agreement" but Buyers should have credit therefor against the purchase price if the purchase was completed; if the purchase was not completed through the fault of Sellers then the note was to be returned to Buyers and if Sellers default was wilful Sellers would pay Buyers $5,000 as liquidated damages. It was stipulated that the Buyers (plaintiffs) breached the contract, their breach was wilful, and that the value of the land was the amount of the purchase price. The trial court allowed the Buyers to recover the $15,000 paid on the promissory note, less $1,967.25 actual damages. The Supreme Court affirmed the judgment in favor of plaintiffs for $13,032.75, except for the period of interest.[1] The court said: ". . . In the present case plaintiffs did not secure an option to purchase or not as they pleased; they entered into a mutually binding contract that could be specifically enforced against them, and they executed and paid the note in part performance of that contract. Under these circumstances the 'mere recitation that the right of the seller to retain this deposit was in consideration for executing this agreement, is insufficient to establish meaningful separate consideration.' (*Rodriguez* v. *Barnett,* 52 Cal.2d 154, 160 [338 P.2d 907]; see also *Estate of Williamson,* 150 Cal.App.2d 334, 336-337 [310 P.2d 77].) Nor does the evidence and finding that the parties meant what they said by their recitation establish 'meaningful separate consideration,' for defendants

---

[1] The court held that prior to the stipulation on September 16, 1958, regarding value of land the amount recoverable was uncertain and plaintiff was entitled to interest only from the date the amount of the recovery became certain by virtue of the stipulation regarding value.

executed the agreement, not in exchange for the note and its payment alone, but in consideration of plaintiffs' agreement to purchase the property on all of the terms stated.

"Since it is only because of plaintiffs' default in completing the purchase that defendants are given the right under the agreement to retain the payments made on the note, plaintiffs correctly contend that the provision giving that right is one 'by which the amount of damage to be paid, or other compensation to be made, for a breach of an obligation, is determined in anticipation thereof.' (Civ. Code, § 1670.) It is therefore void unless it falls within the exception stated in Civil Code section 1671.[1]

"In *Freedman* v. *Rector, Wardens etc. of St. Matthias Parish,* 37 Cal.2d 16 [230 P.2d 629, 31 A.L.R.2d 1], we held that even a willfully defaulting vendee may recover the excess of his part payments over the damages caused by his breach." (Fn. omitted.) (56 Cal.2d p. 519.)

The recent case of *Garrett* v. *Coast & Southern Fed. Sav. & Loan Assn.* (1973) 9 Cal.3d 731 [108 Cal.Rptr. 845, 511 P.2d 1197] involved the validity of a clause in an installment promissory note secured by trust deed providing for an additional charge of 2 percent of the unpaid balance in the event of the late payment of an installment. Defendant contended that it was a clause for liquidated damages. The Supreme Court said at page 737:

"The mere fact that an agreement may be construed, if in fact it can be, to vest in one party an option to perform in a manner which, if it were not so construed, would result in a penalty does not validate the agreement.[5] To so hold would be to condone a result which, although directly prohibited by the Legislature, may nevertheless be indirectly accomplished through the imagination of inventive minds. Accordingly, a borrower on an installment note cannot legally agree to forfeit what is clearly a penalty in exchange for the right to exercise an option to default in making a timely payment of an installment. Otherwise the legislative declarations of sections 1670 and 1671 would be completely frustrated. We have consistently ignored form and sought out the substance of arrangements which purport to legitimate penalties and forfeitures." (Fn. omitted.)

At pages 738 and 739 the court said: ". . . Thus when it is manifest that a contract expressed to be performed in the alternative is in fact a contract contemplating but a single, definite performance with an additional charge contingent on the breach of that performance, the provision cannot escape examination in light of pertinent rules relative to the liquidation of damages."

" 'The validity of a clause for liquidated damages requires that the parties to the contract "agree therein upon an amount which shall be presumed to be the amount of damages sustained by a breach thereof . . . ." (Civ. Code, § 1671.) This amount must represent the result of a reasonable endeavor by the parties to estimate a fair average compensation for any loss that may be sustained.' "

". . . A penalty provision operates to compel performance of an act (*Biles* v. *Robey* (1934) 43 Ariz. 276, 286 [30 P.2d 841]) and usually becomes effective only in the event of default (*Lagorio* v. *Yerxa* (1929) 96 Cal.App. 111, 117 [273 P. 856]) upon which a forfeiture is compelled without regard to the actual damages sustained by the party aggrieved by the breach (*Better Foods Mkts.* v. *Amer. Dist. Teleg. Co., supra,* 40 Cal.2d 179). The characteristic feature of a penalty is its lack of proportional relation to the damages which may actually flow from failure to perform under a contract."

■ A contract provision for liquidated damages is void unless it is shown that the case comes within the provisions of Civil Code section 1671. (*Robert Marsh & Co., Inc.* v. *Tremper,* 210 Cal. 572 [292 P. 950].)

In *Robert Marsh & Co.* v. *Tremper, supra,* plaintiff real estate broker entered into agreements with Smith and Tremper under which Smith and Tremper were to exchange parcels of real property. Smith and Tremper cancelled the deal by mutual consent. Plaintiff's contract contained a clause under which Tremper agreed to pay the agent " '. . . $1,000 as liquidated damages for time, trouble and expense incurred in the within deal, together with reasonable attorney's fees for the collection thereof.' " if the deal was not completed. In reversing judgment for plaintiff the Supreme Court said: ". . . It has many times been held by the decisions of appellate courts of this state wherein cases involving the identical subject matter were under consideration that such an allegation as is contained in respondent's complaint does not bring the case within the exception of said code section. Neither was any sufficient proof offered to supply the defect. The law is that the 'liquidated damage' clause is void unless it is made to appear that the case comes within the exception provided by section 1671, *supra*. The burden rests upon the person who seeks to bring himself within the exception. Upon the face of the complaint and agreement itself the provision which provides for the payment of liquidated damages is void.

"The items which respondent specifically names as constituting the basis of its damages, to wit, 'time, trouble and expenses incurred' in bringing

about the exchange are commonplace items which enter into every contract for service and they have never been held to be impracticable or extremely difficult of determination, but, on the contrary, have been held by numerous decisions to be readily computable. (*McInerney* v. *Mack,* 34 Cal.App. 153 [166 Pac. 867, 868].)

"In actions such as this the person claiming liquidated damages 'must show to the court by proper pleadings and competent proof that the contract falls within the law permitting liquidated damages. This does not depend entirely upon the contract itself. Facts must be pleaded and proven from which the court can say as a matter of law that the contract for liquidated damages is valid because from the nature of the case it would be impracticable or extremely difficult to fix the actual damage. The mere stipulations of the contract are insufficient for that purpose.' (*McInerney* v. *Mack, supra,* citing a long list of authorities.) This principle has been reannounced in *Knight* v. *Marks,* 183. Cal. 354 [191 Pac. 531], and in many more recent decisions of this court and the District Court of Appeal. (*Hanlon Drydock & Shipbuilding Co.* v. *McNear,* 70 Cal.App. 204 [232 Pac. 1002].)" (210 Cal. pp. 575-576.)

■ A litigant seeking to enforce a contractual clause for liquidated damages must plead and prove that at the time the contract was entered into it was, in fact, difficult or impracticable to determine actual damages in event of breach and that the contractual amount represented a reasonable endeavor to ascertain and determine what the damages would be. (*McCarthy* v. *Tally,* 46 Cal.2d 577 [297 P.2d 981]; *Chastain* v. *Belmont,* 43 Cal.2d 45 [271 P.2d 498]; *Rice* v. *Schmid,* 18 Cal.2d 382 [115 P.2d 498, 138 A.L.R. 589]; *Fox Chicago R. Corp.* v. *Zukor's,* 50 Cal.App.2d 129 [122 P.2d 705].) The decision is controlled by the facts not the language of the contract. In *Sun-Maid, etc.* v. *Mosesian & Son, Inc.,* 90 Cal. App. 1 [265 P. 828], plaintiff sued to collect money due under a liquidated damage clause which recited: ". . . 'The parties hereto fully understanding and admitting that it will be impracticable or extremely difficult to fix the actual damages to the buyer, which will result from the breach of this contract by the seller, hereby expressly agree and stipulate that in the event of the seller's neglect, failure or refusal to deliver to the buyer the raisins purchased hereunder, the seller will pay to the buyer the sum of three cents per pound for all raisins covered hereby, and so undelivered, as liquidated damages for such breach.' " (90 Cal.App. p. 3.)

The court said: "The record shows that the appellant simply introduced a contract, and there rested its case on the question of damages without

making any effort whatever to show the circumstances surrounding and attendant upon the execution thereof, upon which the court might base a finding of liquidated damages, the contention of the appellant being that the contract in and of itself is sufficient without further proof.

"․ ․ ․ ․ ․ ․ ․ ․ ․ ․ ․ ․ ․ ․ ․ ․ ․ ․ ․

". . . The law is well settled in this state that the allowance of liquidated damages or the enforcement of a clause in a contract providing for liquidated damages is a matter of pleading and proof. There must be proof of the surrounding and attendant circumstances connected with the execution of the contract, from which the court may make its findings of the impracticability of fixing damages otherwise.

"․ ․ ․ ․ ․ ․ ․ ․ ․ ․ ․ ․ ․ ․ ․ ․ ․ ․ ․

". . . The appellant not having introduced any proof upon which the trial court could have based a finding awarding liquidated damages, it follows that the judgment must be and the same is hereby affirmed." (90 Cal.App., pp. 3, 5, 10.)

In *Thompson* v. *Goubert,* 168 Cal.App.2d 257 [335 P.2d 754], the trial court allowed recovery of damages under a clause in a lease. The appellate court reversed saying that even if the clause be treated as a clause for liquidated damages plaintiff did not plead or prove that it was impracticable or difficult to fix the amount of actual damage which was prerequisite to the enforcement of a liquidated damage clause. The court said at page 260:

"Even though the provision in the lease for liquidated damages could be said to be applicable to this situation such damages were neither pleaded nor proved. In *Kelly* v. *McDonald,* 98 Cal.App. 121, 125 [276 P. 404], the court said:

" 'The decisions of California are in accord with the great weight of authority which holds that liquidated damages may be recovered only upon pleading and proof of facts which bring the contract within the provisions of the exception to the general rule as announced in section 1671 of the Civil Code. (8 Cal.Jur. 891, § 128; *Hanlon Dry Dock Co.* v. *McNear,* 70 Cal.App. 204, 215 [232 P. 1002]; *McInerney* v. *Mack,* 34 Cal. App. 153, 156 [166 P. 867]; *Thomas* v. *Anthony,* 30 Cal.App. 217, 220 [157 P. 823]; *Sun-Maid Raisin Growers* v. *Paul A. Mosesian & Son,* 90 Cal.App. 1 [265 P. 828]; *Dyer Bros. G. W. Iron Wks.* v. *Central Iron Wks.,* 182 Cal. 588, 593 [189 P. 445].) The difficulty of ascertaining actual damages, so as to maintain a suit for breach of contract under the

provisions of the exception to the general rule as it is expressed in section 1671, *supra,* is not presumed, but must be established by proof. (*Green* v. *Frahm,* 176 Cal. 259, 262 [168 P. 114]; *Long Beach City Sch. Dist.* v. *Dodge,* 135 Cal. 401, 404 [67 P. 499].)' "

█ The foregoing authorities demonstrate that the public policy expressed in Civil Code sections 1670 and 1671 may not be circumvented by words used in a contract; that whether or not a particular clause is a penalty or forfeiture or a bona fide provision for liquidated damages depends upon the actual facts existing at the time the contract is executed and whether or not, in fact, it was then impracticable or extremely difficult to fix actual damages and that the parties did in fact then make a good faith and reasonable effort to do so; that a litigant seeking the benefits of a clause purporting to fix liquidated damages must plead and prove that the clause is valid under the facts which then existed. The applicability of Civil Code section 1671 depends upon the actual facts not the words which may have been used in the contract. It is manifest therefore that appellant herein misconceived the law in the court below and misconceives the law here. King Manor apparently felt that the words of the contract were controlling whether or not justified by the facts and that it was not necessary for it to plead or prove that at the time the contract was entered into it was a fact that it was then impracticable or extremely difficult to fix actual damage in the event of a breach of contract, although the parties made a good faith and reasonable effort to do so.

█ There was substantial evidence before the trial court from which it could conclude that it was not, in fact, impracticable or extremely difficult to fix actual damages in event of breach of contract; that the provision regarding payment of $25,000 outside of escrow was in fact a penalty or forfeiture which the attorney for King Manor attempted to conceal and disguise as a bona fide clause for liquidated damages.

█ There is no basis here for the application of the doctrine of estoppel. The idea to attempt to convert a penalty or forfeiture into a clause for liquidated damages originated in the mind of counsel for King Manor, he drafted the language copied from his C.E.B. book for the obvious purpose of attempting to circumvent the public policy expressed in Civil Code section 1670. Counsel for Cooks was under no duty to advise counsel for King Manor on the law. Silence cannot be the basis for estoppel where there is no duty to speak. The court was justified in concluding that Cooks were not estopped to assert the invalidity of Paragraph 31 of the contract. Civil Code section 1670 declares that every contractual clause "by which the amount of damage to be paid, . . . for a breach of an obligation,

is determined in anticipation thereof, is to that extent void, . . ." (except as provided in Civ. Code, § 1671). This is an expression of California public policy. Under Civil Code section 3513 Cooks could not expressly waive the provisions of Civil Code section 1670 since it was established for a public reason. Since Cooks could not expressly waive public policy they may not be estopped to plead it. See 1 Witkin, Summary of California Law (8th ed.), Contracts, section 353, page 298:

"Since an illegal contract is void, it *cannot be ratified* by any subsequent act, and no person can be *estopped to deny its validity*" [citing nine California cases, the Restatement, and other authorities]. (Italics by the author.)

"For the same reason the defense of illegality cannot be waived by stipulation in the contract." (*Id.*, § 353, p. 299.)

"The failure to plead illegality as a defense is not a waiver. The point may be raised at any time, in the trial court or on appeal, by the parties or *on the court's own motion.*" (*Id.*, § 355, p. 299.) (Italics added.)

"The court will look through provisions, valid on their face, and, with the aid of parol evidence, determine that the contract is actually illegal or is part of an illegal transaction." (*Id.*, § 356, p. 300.)

We have examined appellant's claim that it was entitled to additional damages and have concluded that it is without merit—that the trial court properly allowed King Manor all damages that were attributable to the breach.

Finally, King Manor claims that it is entitled to attorney's fees under the contract. The court allowed King Manor $5,600 "Attorney's fees of Donald Kemby attributable to this transaction" and $500 "Attorney's fees of Ed Sanders" representing part of the actual damages sustained by King Manor as a result of the breach. King Manor, however, claims that it is entitled to additional attorney's fees under Paragraph 14 of the contract which reads as follows:

"14. HOLD HARMLESS CLAUSE: Buyer shall hold Seller harmless from any and all claims for any brokerage commission, finder's fees, legal fees, or any similar payments or fees arising out of this transaction."

The judgment of the trial court demonstrates that King Manor wrongfully failed to repay Cooks money which Cooks were lawfully entitled to. If we, or the trial court, were to allow King Manor to recover attorney's fees for defending their conduct in wrongfully failing to pay Cooks money, that Cooks were lawfully entitled to, King Manor would be permitted to take advantage of its own wrong. (Civ. Code, § 3517.) The courts will not lend assistance to persons whose claim for relief rests on illegal trans-

actions. (*Reynolds* v. *Roll,* 122 Cal.App.2d 826 [266 P.2d 222]; cert. den., 348 U.S. 832 [99 L.Ed. 656, 75 S.Ct. 55].)

King Manor received all of the attorney's fees that it was legally entitled to. It was not entitled to additional fees for defending a contractual clause which was void as against public policy.

The judgment is affirmed.

Kaus, P. J., and Hastings, J., concurred.