[Civ. No. 60740. Second Dist., Div. Three. Mar. 16, 1982.]

WESTINGHOUSE ELECTRIC CORPORATION, Plaintiff, v. COUNTY OF LOS ANGELES, Defendant and Respondent; SHERWIN ELECTRIC SERVICE COMPANY, Defendant and Appellant.

**COUNSEL**

Bernard S. Kamine for Defendant and Appellant.

John H. Larson, County Counsel, and Jan A. Pluim, Deputy County Counsel, for Defendant and Respondent.

**OPINION**

GOLDIN, J.*—This is an appeal from that part of a judgment denying prejudgment interest to the assignee of a stop notice claimant (public works) and allowing the public entity to retain the liquidated damages it assessed pursuant to a contract awarded by bid.

*Assigned by the Chairperson of the Judicial Council.

On December 10, 1973, Sherwin Electric Service Company (Sherwin or contractor) as prime contractor, entered into a written public works construction contract with the County of Los Angeles (County). The contract, known as Security & Ballfield Lighting, Various County Parks, provides, in pertinent part, as follows:

*"Payments:*

"Payments on account of the work comprising the original contract will be made upon demand of the Contractor as follows:

"a. On or about the first of each calendar month, a payment equal to ninety percent (90%) of the labor performed and material actually installed in the work during the *previous calendar month* will be made to the Contractor.

"b. Payment of the ten percent (10%) withheld from these monthly progress payments will be made to the Contractor upon completion and acceptance by the Board of Supervisors of all the work called for under said original contract, (including work of the plant maintenance period), regardless of any addition to the contract or any extension of completion time.

". . . . . . . . . . . . . . .

"e. When progress payments are to be made, no payments on account of the work at any time while the same is in progress shall be considered an acknowledgment that any or certain portions of the work have been done in accordance with the drawings and specifications; nor shall any portion of the work be accepted by the Board of Supervisors until the whole is completed. Should there by [*sic*] any balance due the Contractor at the time of acceptance of the work such balance shall be paid upon said acceptance.

". . . . . . . . . . . . . . .

*"Time of completion:*

"The work to be done under the contract shall be completed within 120 calendar days for ballfield lighting and 240 days for the balance of the work, each period beginning with the date stipulated in the written notice to proceed issued by the County Engineer.

*"Liquidated damages:*

"All time limits stated in the contract documents are of the essence of the contract and should the Contractor fail to complete the work required to be done on or before the time of completion as set forth in these specifications, including any authorized extensions of time, it is mutually understood and agreed, by and between the County and the Contractor, that the use by the public of the contract work will be correspondingly delayed and that by reason thereof the County and the public will necessarily suffer great damages; that such damages from the nature of the case, will be extremely difficult and impractical to fix; that the County and the Contractor have endeavored to fix the amount of said damages in advance; that the sum of One Hundred Thirty Dollars ($130.00) a day, for each and everyday's delay in the completion of the work required to be done by the Contractor subsequent to the time of completion, including any authorized extensions of time, is the nearest and most exact measure of damages for such breach that can be fixed now or could be fixed at or after such breach and that, therefore, the County and the Contractor hereby fix said sum of One Hundred Thirty Dollars ($130.00) a day, for each and every such day's delay as liquidated damages, and not as a penalty or forfeiture for the breach of the agreement to complete the work required to be done by the Contractor on or before the time of completion and, in the case of such breach, the County shall deduct said amount from the amount due the Contractor under the contract. In the event the remaining balance due the Contractor is insufficient to cover the full amount of assessed liquidated damages, then the Contractor or the surety on the bonds shall pay the difference to the County."

These terms and conditions were included in the plans and specifications on which all bidders were required to base their bids for the project. There were no actual negotiations between County and Sherwin concerning them.

On December 18, 1973, Sherwin and Westinghouse Electric Supply Company (Wesco, or stop notice claimant) entered into a contract under which Wesco agreed to supply certain equipment and materials for the project and Sherwin agreed to pay for them. Wesco performed as required, pursuant to its contract with Sherwin. Sherwin duly performed pursuant to its contract with County, except that the project was not timely completed. Portions of the project were completed at dif-

ferent times and County took beneficial possession of each part upon its completion:

September 20, 1974—Mayberry Park ballfield lighting

October 25, 1974—Security lighting

November 6, 1974—Valleydale Park ballfield lighting

November 13, 1974—Whittier Narrows ballfield lighting

By January 1, 1975, Sherwin had made demand for payment of the entire contract amount, including the 10 percent retention. On February 7, 1975, Wesco served a stop notice on County for an amount in excess of $40,000, the balance owed Wesco under its contract with Sherwin. As Wesco had a direct contractual relationship with Sherwin, it was not required to serve a preliminary 20-day notice on County before filing its stop notice. The stop notice fully complied with the requirements of Civil Code sections 3103 and 3184. When the stop notice was filed $36,745.35 had not yet been paid by County to Sherwin on the prime contract.

On May 7, 1975, the action below to enforce the stop notice was commenced by Wesco. In its first cause of action Wesco sought the balance due under its contract with Sherwin; in its second cause of action it sought to enforce its stop notice for the same money against contract funds owed by County to Sherwin. County answered on September 26, 1975, admitting the prime contract and receipt of the stop notice and denying everything else. On March 23, 1976, County formally accepted the project. At the same time it extended the time for completion of the project because of delays, assessed liquidated damages of $17,680, deducted the liquidated damages from the balance of the prime contract and determined that $19,065.35 was due Sherwin. Sherwin did not challenge the validity of the liquidated damages assessment. Because of the stop notice, no payment was made to Sherwin. County simply retained the funds; it made no effort to interplead the undisputed sum in the action to enforce the stop notice.

In early 1978 counsel for Sherwin proposed an assignment and release so that the undisputed $19,065.35 held by County could be paid to Wesco and credited against the amount owed it by Sherwin. Counsel for Wesco agreed to consider the proposal and eventually sent a revised

assignment and release to counsel for Sherwin. On May 30, 1978, counsel for Sherwin sent an unexecuted copy of the assignment and release to County counsel for review. That was, apparently, the last communication among the parties concerning the assignment and release.

On March 4, 1980, all aspects of the litigation were settled except the original second cause of action to enforce the stop notice. Wesco assigned the second cause of action to Sherwin. Part of the consideration paid by Sherwin to Wesco in settlement of the first cause of action and the assignment represented the funds held by County pursuant to the stop notice and interest on the money.

The cause was tried on stipulated facts. The court below decided that Sherwin, as assignee of the stop notice claimant, was not entitled to interest on the undisputed money and that the liquidated damages assessment was valid. Accordingly, the court made findings of fact and conclusions of law and entered judgment in favor of Sherwin as Wesco's assignee in the principal amount of $19,065.35 only.

## PREJUDGMENT INTEREST

■ It is well settled that a *private* stop notice claimant is entitled to interest on the unpaid balance due on its contract.

"Where the amount payable under a contract is fixed thereby, interest thereon is recoverable in an action against the promissor from the date the obligation becomes due. [Citations.] The 'equitable garnishment' effected through stop notice proceedings, like a mechanic's lien, 'is as extensive as the claim which it is intended to protect.' [Citation.] In the case at bar, this claim included [the claimant's] demand for the amount due him under his contract and also an award of interest in the event he brought an action to enforce such demand. Interest prior to judgment has been awarded in actions to foreclose mechanics' liens [citations], and also in actions to effect recovery under stop notice proceedings which have resulted in a personal recovery against the owner. [Citation.] By the same standard, interest is recoverable under the circumstances at bar." (*Calhoun* v. *Huntington Park First Sav. & Loan Assn.* (1960) 186 Cal.App.2d 451, 462-463 [9 Cal.Rptr. 479]; see also *A-1 Door & Materials Co.* v. *Fresno Guar. Sav. & Loan Assn.* (1964) 61 Cal.2d 728, 737 [40 Cal.Rptr. 85, 394 P.2d 829]; *Idaco Lumber Co.* v. *Northwestern S. & L. Assn.* (1968) 265 Cal.App.2d 490, 500 [71 Cal.Rptr. 422].)

■ Interest may be assessed against the wrongdoing, personally liable, fundholder at the legal rate from the date the stop notice claimant's obligor should have paid (Civ. Code, § 3287, subd. (a); *Idaco Lumber Co. v. Northwestern S. & L. Assn., supra,* 265 Cal.App.2d at p. 500; *Calhoun v. Huntington Park First Sav. & Loan Assn., supra,* 186 Cal.App.2d at p. 463) regardless of the sum remaining in the fund. The same, however, is not true in the case of the fundholder who has done no wrong, one who has withheld in compliance with the stop notice. Such a fundholder may still be liable for the payment of interest, but only to the extent of the fund. When a fundholder does what the law dictates he is not personally liable and his obligation to pay interest is solely dependent upon the availability of the true obligor's money—the fund. Thus, in *A-1 Door,* the Supreme Court rejected the contention that if a fundholder complies with the private stop notice statute it may never be required to pay prejudgment interest. The court indicated that when the fundholder acts in compliance with the statutory scheme the fundholder's liability is limited to the amount of the fund against which the claim is asserted. Furthermore, interest is also due. The stop notice claimant has effected an "equitable garnishment" coextensive with his claim against his promissor. The claimant's promissor, having failed to pay when obligated to do so, is chargeable with prejudgment interest (Civ. Code, § 3287, subd. (a)) and, so consequently is the fundholder. "To the extent that construction-loan funds are available, ... the fundholder must pay whatever the owners owe the stop-notice claimants." (61 Cal.2d at p. 737.) (Accord, *Swinerton & Walberg Co. v. Union Bank* (1972) 25 Cal.App.3d 259, 268 [101 Cal.Rptr. 665, 54 A.L.R.3d 839].)

■ The rationale of the foregoing decisions compels the conclusion that Sherwin, as assignee of the public works stop notice claimant, is entitled to prejudgment interest, to the extent of the fund held by County. The stop notice effected an "equitable garnishment" coextensive with the claimant's claim against the contractor. That claim was for the balance due plus interest from the due date. In response to the stop notice, County withheld what it had in the fund. From that source County became obligated to pay, to the extent of available money, whatever the contractor owed the claimant, including interest. (See Civ. Code, § 3187.)

This, however, does not end our inquiry. At the time the stop notice was served upon County there remained $36,745.35 unpaid on the prime contract (later reduced by the assessment for liquidated damages

to $19,065.35). The sum remaining was less than the $40,000 plus claimed. Sherwin contends that, under the circumstances of this case, the stop notice claimant is entitled to interest, at least on the undisputed $19,065.35 due on the prime contract, even though its claim exceeds the dollar amount withheld. Sherwin makes three arguments in support of its novel position. One, that Government Code section 980 requires the County to pay interest here, is dispositive of the question.

Government Code section 980 provides: "Whenever a request for payment from the state or a local entity pursuant to the terms of a contract for the construction of a public works project as defined in Section 1720 of the Labor Code is properly filed and the validity of such claim is not disputed or has been settled or agreed upon, payment of such claim by the disbursing officer of the state or local public entity shall include interest at the legal rate of 7 percent per annum commencing 90 days after the proper submission of such claim."

The contract in the case at bar was fully completed and the last portion taken over by County on November 13, 1974. "Acceptance" occurred on November 13, 1974. "[W]ork should be viewed as accepted when it is finished even though a governmental body specifies a later date." (*Peter Kiewit Sons' Co.* v. *Pasadena City Junior College Dist.* (1963) 59 Cal.2d 241, 246 [28 Cal.Rptr. 714, 379 P.2d 18].) Sherwin, as the contractor, made its request for payment of the entire balance due on the contract by January 1, 1975. County never disputed the validity of the sum of $19,065.35. Indeed, its only "dispute" with respect to the unpaid balance—$36,745.35—was its asserted offset for liquidated damages, an amount it settled upon in March 1976. From January 1, 1975, County held money due the prime contractor on the contract. Government Code section 980 requires County to pay interest on that money.

County is not relieved of the obligation to pay interest because it withheld payment to satisfy the stop notice. County knew it would have to pay the balance due on the contract. The only question was, to whom—Sherwin or Wesco. And, whether payment went to Sherwin as prime contractor, or Wesco as stop notice claimant, the money would be that which had always been due on the contract. Government Code section 980 put County on notice that when it finally paid the balance due, it would have to do so with interest. Had the ultimate determination been in favor of the contractor rather than the stop notice claimant, there can be no doubt that County would have been under a

mandate, pursuant to Government Code section 980, to pay both principal and interest. The stop notice claimant takes what is due on the contract. In this case, that is the undisputed $19,065.35, plus interest.

We do not agree with the response to a similar contention given by the Court of Appeal for the Fourth District, Division Two in *Leatherby Ins. Co.* v. *City of Tustin* (1977) 76 Cal.App.3d 678 [143 Cal.Rptr. 153]. In *Leatherby*, a bonding company, Leatherby, paid off the stop notice claimants, then demanded the contract retention funds and interest from the public entity, Tustin. Interest from the date of Leatherby's demand, only, was allowed and the contention that the stop notice claimants would have been entitled to interest from an earlier date was rejected. "All they could have recovered was the amount of the contract retention fund. However, when all the claims were satisfied, there was no legal reason for Tustin to withhold, and it elected to do so at its peril after the demand." (76 Cal.App.3d at p. 690.) The opinion does not mention and does not appear to consider the fact that pursuant to Government Code section 980, "the contract retention fund" necessarily includes the interest which the statute warns the County should be prepared to pay.

Government Code section 980 dictates that interest be paid at the rate of 7 percent per year, commencing 90 days after proper submission of the claim. The contractor submitted a request for payment of the full balance due on its contract with County by January 1, 1975. Ninety days from January 1, 1975, was April 2, 1975. The stop notice claimant (here, Sherwin, as assignee) is entitled to what the contractor would have received—interest at 7 percent per year on $19,065.35 from April 2, 1975.

### LIQUIDATED DAMAGES

█ The trial court decided that the stop notice claimant had standing to challenge the validity of the liquidated damages assessment, "since the funds claimed by County as liquidated damages would otherwise have been paid to WESCO pursuant to the stop notice." The trial court then held that the liquidated damages provision and the assessment were valid. On this appeal by Sherwin, as assignee, County again urges that Wesco (and now Sherwin, as Wesco's assignee) has no standing. Sherwin, as assignee, asserts that it has standing and contends that the liquidated damages provision is unenforceable.

As a threshold matter it should be noted that County may complain of the trial court's ruling on the issue of standing, even though County has not appealed from the judgment. (Code Civ. Proc., § 906; *Mott* v. *Horstmann* (1950) 36 Cal.2d 388 [224 P.2d 11]; *La France Enterprises* v. *Van Der Linden* (1977) 70 Cal.App.3d 375, 379 [138 Cal.Rptr. 690].)

Whether a stop notice claimant, who is not a party to the prime contract, has standing to challenge a liquidated damages assessment which has reduced the contract retention fund available to satisfy the stop notice, appears to be a question of first impression. However, the short answer, "yes, the claimant has standing," flows from Civil Code section 3186. That section requires the public entity to withhold from the original contractor money due or to become due. The stop notice affects what has variously been called an equitable garnishment or an assignment of that money. (*United States Fid. & Guar. Co.* v. *Oak Grove Union School Dist.* (1962) 205 Cal.App.2d 226, 230 [22 Cal.Rptr. 907].) Funds withheld from the contractor as liquidated damages are not "earned" by the contractor. Hence, they are not "due or to become due." (*Harsco Corp.* v. *Department of Public Works* (1971) 21 Cal. App.3d 272, 276 [98 Cal.Rptr. 337].) Since the stop notice claimant has an interest, not merely in whatever fund the public entity and the prime contractor *agree* has been properly retained, but in *all* money due or to become due (up to the amount of the claim), the stop notice claimant has a right to assert that more is due than the contracting parties were willing to leave in the retention fund. "Once the stop notices were filed properly...and there was at the time of filing or thereafter money earned by the contractor and unpaid, an equitable assignment or garnishment *pro tanto* in favor of the stop claimants occurred and a cause of action thereon arose in their favor." (*United States Fid. & Guar. Co.* v. *Oak Grove Union School Dist., supra*, 205 Cal.App.2d at p. 231.) Furthermore, the stop notice claimant, in a sense, stands in the shoes of the contractor with reference to the withheld funds. The contractor could have denied the validity of the liquidated damages provision (*Cook* v. *King Manor and Convalescent Hospital* (1974) 40 Cal. App.3d 782, 790-793 [115 Cal.Rptr. 471]) and maintained the fund intact, and so may Wesco (and its assignee, Sherwin).

Sherwin and County executed the contract on December 10, 1973. On that date Civil Code sections 1670 and 1671 provided respectively:

"Every contract by which the amount of damage to be paid, or other compensation to be made, for a breach of an obligation, is determined in anticipation thereof, is to that extent void, except as expressly provided in the next section."

"The parties to a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."

With respect to *private* contracts, Civil Code sections 1670 and 1671 expressed a strong public policy against liquidated damages provisions, and required the party seeking to enforce the contract provision to plead and prove that the liquidated damages clause fit a particular exception to section 1670. (*Cook* v. *King Manor and Convalescent Hospital, supra*, 40 Cal.App.3d at pp. 789-793.) A party seeking liquidated damages was required to prove certain foundational facts before it could avail itself of the Civil Code section 1671 presumption: (1) an agreement fixing the amount of liquidated damages; (2) impracticability or extreme difficulty of fixing actual damages; and (3) an endeavor by *both* parties, not just one, to arrive at an amount reasonably related to actual damages. (*United Sav. & Loan Assn.* v. *Reeder Dev. Corp.* (1976) 57 Cal.App.3d 282, 298, 300 [129 Cal.Rptr. 113]; but see *Better Food Mkts.* v. *Amer. Dist. Teleg. Co.* (1953) 40 Cal.2d 179, 186 [253 P.2d 10, 42 A.L.R.2d 580]; *Feary* v. *Aaron Burglar Alarm, Inc.* (1973) 32 Cal.App.3d 553, 557-558 [108 Cal.Rptr. 242], in which non-negotiated liquidated damages provisions were found to be valid where the impracticability of fixing actual damages appeared as a matter of law.)

A distinction has, however, been drawn between public and private contracts. It is generally recognized that damages for delay in completing public projects are extremely difficult to ascertain. The United States Supreme Court observed that liquidated damages "serve a particularly useful function when damages . . . are unmeasurable, as in the case in many government contracts." (*Priebe & Sons* v. *United States* (1947) 332 U.S. 407, 411 [92 L.Ed. 32, 38, 68 S.Ct. 123]; see e.g., *Six Companies* v. *Joint Highway Dist. No. 13* (N.D. Cal. 1938) 24 F.Supp. 346, affd. (9th Cir. 1940) 110 F.2d 620; revd. in part on other grounds, 311 U.S. 180 [85 L.Ed. 114, 61 S.Ct. 186]; see also *Bethlehem Steel Corporation* v. *City of Chicago* (7th Cir. 1965) 350 F.2d 649.) Liquidated damage clauses in public contracts are frequently validated

precisely because delay in the completion of projects such as highways "would cause incalculable inconvenience and damage to the public." (*Bethlehem Steel Corporation* v. *City of Chicago, supra,* 350 F.2d 649; *Dave Gustafson & Co.* v. *State* (1968) 83 S.D. 160 [156 N.W.2d 185]; *Silva & Hill Constr. Co.* v. *Employers Mut. Liab. Ins. Co.* (1971) 19 Cal.App.3d 914, 919 [97 Cal.Rptr. 498].) Thus, it is accepted that damage in the nature of inconvenience and loss of use by the public are real but often, as a matter of law, not measurable.

Furthermore, liquidated damage clauses for delay in public works projects are not, generally, disfavored. In fact, "[e]ach of the fifty states and the federal government have devised similar provisions [to Gov. Code, § 14376] for the imposition of pre-set damages to be paid by the contractor." (*Silva & Hill Constr. Co.* v. *Employers Mut. Liab. Ins. Co., supra,* 19 Cal.App.3d at p. 918.) Courts have repeatedly said that liquidated damage provisions in public contracts are *not* against public policy. (See, e.g., *Robinson* v. *United States* (1923) 261 U.S. 486, 488 [67 L.Ed. 760, 761, 43 S.Ct. 420]; *Jasper Construction, Inc.* v. *Foothill Junior College Dist.* (1979) 91 Cal.App.3d 1, 14 [153 Cal.Rptr. 767]; *Nomellini Constr. Co.* v. *State of California* ex rel. *Dept. of Wat. Resources* (1971) 19 Cal.App.3d 240, 245 [96 Cal.Rptr. 682].)

The case at bar falls squarely within the reasoning of those decisions which uphold liquidated damages clauses for delay in the completion of *public* projects. The contract was for public park lighting, which, if not completed in a timely manner would inconvenience the public in an incalculable amount. Hence, actual damage was plainly not capable of being determined and the rationale of the *Better Food* and *Feary* cases would support a finding that the foundational facts exist as a matter of law. (See *Barbera* v. *Sokol* (1980) 101 Cal.App.3d 725, 734 [161 Cal.Rptr. 843].) And, the contract is of the same *character* as those state contracts in which liquidated damages provisions were mandatory in 1973 (Gov. Code, § 14376) and expressly authorized in county contracts after January 1, 1974 (Gov. Code, § 53069.85). It is the type of contract in which the predetermined damages for delay provision is not against public policy. The character of the contract, the widespread use of liquidated damages provisions in such contracts, and the protection afforded the public by such provisions are factors which lead to the conclusion that the provision here involved is enforceable.

The judgment is reversed with instructions that the trial court enter judgment in favor of Sherwin for prejudgment interest on $19,065.35 at

7 percent per annum from April 2, 1975. In all other respects the judgment is affirmed.

Klein, P. J., and Potter, J., concurred.