[Civ. No. 50943. Second Dist., Div. Two. Jan. 18, 1978.]

SYBRON CORPORATION, Plaintiff and Respondent, v.
CLARK HOSPITAL SUPPLY CORPORATION et al.,
Defendants and Appellants.

**COUNSEL**

Blacker & Stauber and Sidney G. Blacker for Defendants and Appellants.

Latham & Watkins and Lance B. Wickman for Plaintiff and Respondent.

**OPINION**

**FLEMING, J.**—Respondent seller sued appellant buyers for payment of $143,977.68 for hospital beds delivered under contract. Appellants raised affirmative defenses of defective goods and out-of-court rescission and also cross-complained for damages of $159,739. Under a settlement reached on 2 December 1975 appellants agreed to pay respondent $72,000 in 12 equal monthly installments with interest on the unpaid balance at 10 percent, with the proviso that if appellants should default on any payment, then, after 10 days notice of default and opportunity to cure, stipulated judgment for $100,000 could be entered in respondent's favor. After paying $42,000 appellants became delinquent, and on proper notice, respondent on 24 August 1976 obtained a stipulated judgment for $100,000. On 15 October 1976 appellants offered to pay with interest the delinquent installments owing on the agreed $72,000, an offer which respondent rejected. Thereafter on October 26 appellants moved to set aside the judgment, claiming surprise and excusable neglect

under Code of Civil Procedure section 473 and requesting equitable relief from forfeiture under Civil Code section 3275.[1] The motion was denied. On appeal appellants principally contend that the $28,000 differential between the installment obligation of $72,000 and the stipulated judgment of $100,000 constitutes an unenforceable penalty and forfeiture imposed on them for nonpayment of $30,000. (Civ. Code, §§ 1670, 1671, 3275.)[2]

Appellants' installment payments under the December 1975 agreement were late five times. The installment due 3 March 1976 was not paid until March 24. The May 3 installment became delinquent, and was not paid until after May 28. Finally, the June and July installments were both missed, and on July 9 respondent demanded payment and gave formal notice of default under the agreement. On July 13 and 19 appellants submitted two checks in payment of the delinquent installments but one of these checks was returned on August 3 for insufficient funds. The August installment likewise remained unpaid. Respondent thereupon obtained the $100,000 stipulated judgment. In appellants' motion to set aside the judgment, they asserted their bank mistakenly returned their check for insufficient funds, because although there were insufficient funds in the account on which the check was drawn, appellants had authorized the bank to use funds from other accounts to cover checks drawn on this account. The trial court rejected this excuse as unsupported by the record.

## DISCUSSION

1. The decision to set aside a judgment for surprise or excusable neglect under Code of Civil Procedure section 473 rests in the sound

---

[1]Within the time limit for a section 473 motion, the remedies overlap; beyond that time the judgment can be attacked only under Civil Code section 3275 on the ground of equitable relief from forfeiture, for which a somewhat stronger showing is necessary. (See *Olivera* v. *Grace* (1942) 19 Cal.2d 570, 576 [122 P.2d 564, 140 A.L.R. 1328]; *Weitz* v. *Yankosky* (1966) 63 Cal.2d 849, 855, 857 [48 Cal.Rptr. 620, 409 P.2d 700].)

[2]Section 1670: "Every contract by which the amount of damages to be paid, or other compensation to be made, for a breach of an obligation, is determined in anticipation thereof, is to that extent void, except as expressly provided in the next section."

Section 1671: "The parties to a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."

Section 3275: "Whenever, by the terms of an obligation, a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture, by reason of his failure to comply with its provisions, he may be relieved therefrom, upon making full compensation to the other party, except in case of a grossly negligent, willful, or fraudulent breach of duty."

discretion of the trial court, and in the absence of clear abuse that decision will not be disturbed. We find no abuse of discretion here. (E.g., *Price* v. *Hibbs* (1964) 225 Cal.App.2d 209 [37 Cal.Rptr. 270].)

2. This cause, however, additionally involves the more difficult problem of the enforceability of an agreed contract containing ostensibly penal provisions. ■ Under California law liquidated damages not reasonably related to actual damages are unenforceable and void as penalties. An exception exists where damages cannot readily be ascertained (Civ. Code, §§ 1670, 1671, *supra,* fn. 2), but since damages for the withholding of money are easily determinable—i.e., interest at prevailing rates—penal provisions for mere delay in the payment of money are not ordinarily enforceable. (Civ. Code, § 3302; *Knight* v. *Marks* (1920) 183 Cal. 354, 357 [191 P. 531].) Although provisions for liquidated damages for late payments can be characterized as provisions for alternative performance rather than penalties, and were once enforced as such (see *Hellbaum* v. *Lytton Sav. & Loan Assn.* (1969) 274 Cal.App.2d 456 [79 Cal.Rptr. 9]), it is now clear that when such "late charges" bear no relation to actual damages for delay, they are void. (*Garrett* v. *Coast & Southern Fed. Sav. & Loan Assn.* (1973) 9 Cal.3d 731, 740 [108 Cal.Rptr. 845, 511 P.2d 1197, 63 A.L.R.3d 39].) Furthermore, the burden falls on the party seeking to enforce liquidated damages to establish that damages for delay were impracticable to ascertain at the time the contract specifying liquidated damages was executed. (*Lowe* v. *Massachusetts Mut. Life Ins. Co.* (1976) 54 Cal.App.3d 718, 734 [127 Cal.Rptr. 23].) ■ And, finally, the substance of the transaction governs, rather than the parties' characterization of the form in which it has been cast. (*Garrett, supra,* pp. 735-737.)

*Garrett* expressly held that late charges assessed under savings and loan installment notes are void when not based on attempts to estimate "a fair compensation for a loss which would be sustained on the default of an installment payment." (9 Cal.3d at p. 740.) Damages for wrongful withholding of money are fixed by law, said the court, and other damages resulting from a borrower's default, such as administrative and accounting costs, "would not appear to present extreme difficulty in prospective fixing." (P. 741.)

Subsequent to *Garrett* several cases have considered contract provisions challenged as penal under Civil Code sections 1670 and 1671. In *Lowe* v. *Massachusetts Mut. Life Ins. Co.* (1976) 54 Cal.App.3d 718, 728, 732-733 [127 Cal.Rptr. 23], the court upheld retention of a 2 percent

stand-by deposit to secure a real estate loan commitment, in that the deposit (1) was in the nature of an option that gave the borrower further time to shop around, and (2) was reasonable in amount. In *Western Camps, Inc.* v. *Riverway Ranch Enterprises* (1977) 70 Cal.App.3d 714, 725-727 [138 Cal.Rptr. 918], 71 Cal.App.3d 802g, the court upheld a lump-sum payment for termination of a sublease as a valid alternative performance provision. In *Blank* v. *Borden* (1974) 11 Cal.3d 963, 970, 971-972 [115 Cal.Rptr. 31, 524 P.2d 127], the court upheld the withdrawal-from-sale provision of an exclusive authorization to sell real estate, concluding that such provision was neither a penalty nor a claim for liquidated damages, but rather a claim of indebtedness under contract provisions which presented a true alternative choice of performance. The court in *Blank* quoted a passage from McCormick on Damages which helps clarify the distinction between alternative performance and penalty: "[I]n . . . an alternative contract the promise to pay may be a penalty, and void as such. If a contract provides that A will either convey land then worth about $10,000 within six months at a price of $10,000 or will pay $250, it is quite clear that a reasonable man might look forward to either choice as a reasonable possibility, and there is no reason for hesitating to enforce the promise to pay if the land is not conveyed. If, on the other hand, A's promise provides that he shall either pay $100 on January 1st or $200 on demand thereafter, a different situation is presented. No reasonable man would, when the contract was made, consider that there was any rational choice involved (conceding the ability to pay either sum) in determining which course to pursue. If he can do so, he will pay the lesser sum, and the agreement necessarily is founded on this assumption, and the only purpose and effect of the formal alternative is to hold over him the larger liability as a threat to induce prompt payment of the lesser sum. Consequently, while an alternative promise to pay money when it presents a conceivable choice is valid, yet, if a contract is made by which a party engages himself either to do a certain act or to pay some amount which at the time of the contract no one would have considered an eligible alternative, the alternative promise to pay is unenforceable as a penalty." (McCormick, Damages (1935) § 154, pp. 617-618.)

In contrast to the foregoing cases a provision for retention of a $25,000 liquidated damages deposit for failure of the buyers to purchase real property was held invalid as a penalty clause in *Cook* v. *King Manor and Convalescent Hospital* (1974) 40 Cal.App.3d 782, 792 [115 Cal.Rptr. 471]. The court found no evidence that damages were difficult or impossible to ascertain and declared that the language used by the parties was not

controlling, in that parties may not circumvent the public policy of sections 1670 and 1671 by characterizing penalties as something else.[3]

Two other cases are factually close to that at bench and relevant to the issue of stipulation—*Chambreau* v. *Coughlan* (1968) 263 Cal.App.2d 712 [69 Cal.Rptr. 783], and *L. A. City Sch. Dist.* v. *Landier Inv. Co.* (1960) 177 Cal.App.2d 744 [2 Cal.Rptr. 662]. In *Chambreau,* the parties stipulated to judgment for $8,025, but agreed to stay execution provided defendant paid the lesser sum of $5,500 in regular monthly installments. On default, the larger judgment would become effective. Defendant paid the full $5,500 but was late in paying one installment. The court disallowed plaintiff's attempt almost two years later to execute on the greater judgment, concluding that defendant was entitled to equitable relief from forfeiture under Civil Code section 3275. In *Landier,* the parties stipulated that defendant would pay plaintiff a certain sum in 8 annual installments without interest; but if a 30-day default occurred followed by a 30-day period without cure, then judgment could be entered against defendant for twice the unpaid balance. The parties themselves characterized this provision as an "economic sanction" for failure to pay. Four years after executing the stipulation and making payments thereunder, defendant sought to have the provision declared unenforceable as a penalty. Relief was denied as untimely, but in dictum the court noted that the provision for double payment constituted a penalty. (P. 754.) *Landier* thus casts added doubt on the ability of parties with equal bargaining power to enter into a stipulation of the type now before us. (See Sweet, *Liquidated Damages in California* (1972) 60 Cal.L.Rev. 84, 128-129, and Crane, *Recent Decisions on Damages* (1960) 12 Hastings L.J., 109, 119-120.)

■ At bench the trial court declined to relieve appellants from the consequences of their stipulation for judgment. This exercise of discretion might have been based, as in *Landier,* on evidence of lack of equity on appellants' part: e.g., their delay in attacking the agreement; their history of repeated delinquencies, which made collection difficult; and their responsibility for errors of their own bank. Yet overall, these

---

[3]Respondent here claims the parties expressly agreed that appellants' obligation was not a penalty. The agreement said: "The parties hereto expressly agree that the obligation of Hospital to pay $100,000 to Sybron in the event of default is not a forfeiture or penalty, but a recognition of a fair sum owed to Sybron in settlement of this dispute." The parties' employment of particular terminology does not change the substance of their agreement.

failings were relatively minor. The trial court chose to deny relief on the ground that damages would have been difficult to fix, and therefore the provision for liquidated damages was valid. That decision failed to take into account the need for proportion in damages—the critical item in evaluating penalty and forfeiture. The provision for judgment here appears considerably harsher than the arrangement characterized as penal in *Garrett.* (*Garrett* v. *Coast & Southern Fed. Sav. & Loan Assn.* (1973) 9 Cal.3d 731 [108 Cal.Rptr. 845, 511 P.2d 1197, 63 A.L.R.3d 39].) And because we are dealing with a singular transaction, less justification exists for use of an arbitrary formula to ascertain damages than in the instance of savings and loan associations, which with their many identical installment obligations have an obvious stake in routinizing collection of damages for delayed payment. We think the penalty at bench bears no reasonable relationship to actual damages suffered by respondent as the result of delay but to the contrary appears grossly disproportionate in amount. Certainly there is paperwork and time involved in the collection of an installment obligation. The creditor is entitled to bargain that if the installment debtor imposes upon the creditor by a continuing course of dilatory payment the creditor may accelerate and collect the entire obligation, plus a reasonable amount to compensate for delay. On the other hand, the equitable powers of the court exist to insure that the ultimate obligation imposed on the debtor is not unreasonable *in proportion* to the original obligation and the seriousness of the default. The Uniform Commercial Code adopts the position that liquidated damages clauses may be enforced if the amount is reasonable but "a term fixing unreasonably large liquidated damages is void as a penalty" (see Cal.U.Com. Code, § 2718). At bench, enforcement of the default provisions under the 1975 agreement would result in a $28,000 penalty for delay in payment of $30,000, a penalty which bears no rational relationship to the amount of actual damages suffered by respondent. Such an agreement is unenforceable. (Civ. Code, §§ 1670, 1671, 3275; *Garrett* v. *Coast & Southern Fed. Sav. & Loan Assn.* (1973) 9 Cal.3d 731 [108 Cal.Rptr. 845, 511 P.2d 1197, 63 A.L.R.3d 39]; *Freedman* v. *The Rector* (1951) 37 Cal.2d 16, 21-22 [230 P.2d 629, 31 A.L.R.2d 1]; *Barkis* v. *Scott* (1949) 34 Cal.2d 116, 123 [208 P.2d 367]; *Ebbert* v. *Mercantile Trust Co.* (1931) 213 Cal. 496, 499 [2 P.2d 776].)

The judgment is reversed, and the cause is remanded to the trial court with directions to reduce the stipulated judgment to $72,000, plus interest, attorneys fees, and costs. Respondent shall be afforded an opportunity under the agreement of the parties (art. 5) to establish

reasonable attorneys' fees attributable to appellants' unwarranted delays in payment. Costs on this appeal to appellants.

Roth, P. J., and Compton, J., concurred.

Petitions for a rehearing were denied February 6, 1978.