623 So.2d 565 (1993)
CROSBY FORREST PRODUCTS, INC., etc., Appellant,
v.
John C. BYERS, etc., et al., Appellees.
No. 92-2062.
District Court of Appeal of Florida, Fifth District.
August 20, 1993.
*566 Armistead W. Ellis, Jr., of Armistead W. Ellis, Jr., P.A., and Heebner, Baggett, Prechtyl & Ellis, Daytona Beach, for appellant.
B. Allen Heeke, Jr., of Caldwell & Pacetti, Palm Beach, for appellees.
PETERSON, Judge.
Crosby Forrest Products, Inc. (Crosby) appeals an order granting relief under Florida Rule of Civil Procedure 1.540(b) from a $66,399.99 final judgment entered against John C. Byers, Southern Building Products, Inc., and Southern Truss of Orlando, Inc. (collectively, Southern). We reverse.
This litigation began on October 8, 1991 when Crosby sued Southern Building Products, Inc. and Southern Truss of Orlando, Inc., for goods sold in the amount of $89,922.65. Byers was sued as a guarantor. The parties settled and entered a written stipulation in January, 1992. The pertinent portions of the agreement provided that:
(1) Southern owed Crosby $93,899.91 including $89,922.65 principal, interest of $2,699.76, costs of $207.50 and attorney's fees of $1,000.
(2) Southern would pay Crosby $80,000 by making an initial payment of $10,000 in cleared funds or an attorney's trust check no later than January 6, 1992. The $70,000 balance would be paid monthly in installments of $5,833.34 plus 10% interest on the last day of each month beginning February 29, 1992.
(3) Time was of the essence.
(4) In the event of a default of any payment "the Court may immediately, without further notice or hearing, enter judgment against [Southern] for any sums remaining unpaid on the amount stipulated to be due in paragraph numbered 1 [$93,899.91] herein, less any payments made under this stipulation, upon the filing of an Affidavit as to Defendant's [sic] default under the terms of this stipulation of payment by the attorney for the Plaintiff with the Clerk of this Court."
(5) Execution would issue forthwith upon entry of final judgment.
(6) If Southern timely made all payments on the $80,000, Crosby would dismiss the action with prejudice and the stipulation would act as a general release between the parties.
Southern successfully made three payments, but the fourth attempted payment was made by a check that was dishonored by Southern's drawee bank. Crosby's attorney filed an affidavit stating that Southern was in default because its check representing the May 1992 payment was returned for insufficient funds. The affidavit was served by mail on Southern on June 17, 1992 and a final judgment was entered on June 24, 1992 in the amount of $66,399.89.
On July 2, 1992 Southern moved to vacate the judgment pursuant to Rule 1.540(b), alleging that the check did not clear for two reasons. First, before sending the check, Southern's bookkeeper advised Southern that the check would clear, but the bookkeeper had made a mathematical error not discovered until Southern received the nonpayment affidavit. Second, Southern's overdraft protection by the drawee bank should have covered *567 the check. The motion states that Southern's attorney called Crosby's attorney and offered to make good on the returned check and to make all future payments by certified check. According to the motion, Crosby's attorney agreed in substance but conditioned upon his client's approval. Crosby refused the offer. The motion further alleged that only the May check was dishonored, that Crosby did not attempt to contact Southern to allow them to replace the dishonored check, and that a certified check to replace the dishonored check was forwarded by Federal Express along with the June payment. Finally, the motion alleged that the default was unintentional and that further problems would be avoided by making all future payments by certified check. The trial court set aside the original final judgment and ordered Southern to make all further payments by cashier's checks. It is from that order that Crosby appeals.
Settlement agreements are highly favored and once entered, are binding upon the parties and the courts. Dorson v. Dorson, 393 So.2d 632 (Fla. 4th DCA 1981). They are to be interpreted by the same principles governing the interpretation of contracts. Dorson at 633. When a contract so provides, time is of the essence. Blaustein v. Weiss, 409 So.2d 103 (Fla. 4th DCA 1982); compare, Singer Island Civic Ass'n v. Casetta, Ltd., 527 So.2d 861 (Fla. 4th DCA 1988), rev. denied, 536 So.2d 243 (Fla. 1988). A judgment may be entered based upon a settlement agreement and it becomes a contract between the parties. Weinberg v. Lozman, 364 So.2d 841 (Fla. 3d DCA 1978).
Below, Southern did not argue that they did not breach the contract. They sought relief below from the consequences of their breach because the breach was the result of a mistake. On appeal, Southern argues in support of the trial court's order that the portion of the stipulation requiring it to pay the remaining balance of the original $93,899.91 rather than the balance of the $80,000 is a penalty or windfall provision and is unenforceable. Crosby counters that the stipulated amount of $80,000 provided for a discount to induce faithful performance of the obligation to make payments and to bring the original litigation to an end.
A contract term which provides that a party must pay a penalty for breaching a contract is unenforceable.
A penalty is a sum named, which is disproportionate to the damages which could have been anticipated from breach of the contract, and which is agreed upon in order to enforce performance of the main purpose of the contract by the compulsion of this very disproportion. It is held in terrorem over the promisor to deter him from breaking his promise.
5 Williston on Contracts § 776, at 668. If damages are readily ascertainable on the date of the contract, a stipulated damages clause is a penalty and unenforceable. Hutchison v. Tompkins, 259 So.2d 129 (Fla. 1972). If they are not ascertainable the clause is for liquidated damages and enforceable if the amount is not grossly disproportionate to the damages that might reasonably be expected to flow from the breach. Lefemine v. Baron, 573 So.2d 326 (Fla. 1991).
Of course, Southern argues that damages for the breach are readily ascertainable  the agreed upon amount of $80,000 less payments made. It can be noted, however, that the instant case does not involve an original contract but one made to settle the controversy which arose out of the alleged breach of the original contract. Rather than beginning with a lesser amount as the original debt and imposing a premium for nonpayment, the instant case involves a higher amount stipulated to be the amount owed, and, inferentially, an amount that was generated through purchases of goods by Southern from Crosby. In fact the higher amount is supported in the record by copies of invoices.
No Florida cases on point have been found, but two states have reached conflicting results under similar facts. The facts in Sybron Corp. v. Clark Hospital Supply Corp., 76 Cal. App.3d 896, 143 Cal. Rptr. 306 (1978) are very similar to those in the instant case. A seller sued the buyer for $144,000 for goods sold, and buyer raised, inter alia, an allegation of defective goods. After the buyer counterclaimed for $160,000, the parties agreed that the buyer would pay $72,000 plus *568 interest in 12 monthly installments. The agreement provided that if the buyer defaulted on any payment, upon notice of default and 10 days opportunity to cure, a stipulated judgment for $100,000 would be entered for the seller.[1] The buyer made five late payments and, after notice of default as to the sixth and seventh payments, the buyer submitted two checks, one of which was dishonored. The seller applied for and obtained a stipulated judgment for $100,000. The buyer then moved to set aside the judgment alleging that its overdraft protection should have covered the check. On appeal the court held that the lower court did not abuse its discretion in refusing to vacate the judgment. The appellate court reversed, however, based upon its determination that the agreement provided for a penalty. The court reasoned that the contract did not provide for true alternatives, that the damages  lost interest on the late payments  were ascertainable, and that the enhanced amount bore no reasonable relation to the actual damages.
Sybron relied heavily upon Chambreau v. Coughlan, 263 Cal. App.2d 712, 69 Cal. Rptr. 783 (1968) where "the parties stipulated to judgment for $8,025 but agreed to stay execution provided defendant paid the lesser sum of $5,500 in monthly installments. Failing to make a monthly payment would restore the larger obligation. Defendant paid the full $5,500 but was late in paying one installment. The court disallowed plaintiff's attempt almost two years later to execute on the greater amount, concluding that defendant was entitled to relief from forfeiture under the California Code.
In Resolution Trust Corp. v. Avon Center Holdings, Inc., 832 P.2d 1073 (Colo. App. 1992) a lender obtained a partial summary judgment holding that a borrower was liable on a note but that the borrower was entitled to assert certain defenses at trial. The parties then settled by obligating the borrower to pay installments totaling $2 million. If an installment was not paid on time, and after notice and 30 days to cure, judgment based on an affidavit of default could be entered for $5.7 million. The settlement was approved and made an order of court. The borrower defaulted on the first payment and judgment for $5.7 million was entered. The appellate court stated that penalty provisions are generally unenforceable but noted the proposition that, "in a contract of accord for breach of a previously broken contract, the parties may agree on what terms of settlement they will, however unfavorable (short of unconscionability) the accord may be to the party in default." Id. at 1075, citing Williston on Contracts § 780, at 700. The court concluded that the trial court's partial summary judgment (which recognized that the borrower had affirmative defenses and counterclaims) established prima facie that the larger amount was due. Therefore, there was no penalty because the larger amount bore a reasonable relation to the losses that might have been sustained.
There seems little to be gained by engaging in an analysis of whether escalation clauses of the type involved in the instant case and the cases cited should be classified as providing for a penalty or a discount. The obligor probably considers the reduction in the disputed amount as a discount when the agreement is made. It quickly becomes a penalty if the obligation to pay a larger amount is restored after default. A better approach might be a recognition of the right of freedom of contract at least where the larger amount payable upon default represents a legitimate amount as reflected by the record, a judgment or stipulation and where it is not a subterfuge for usury or an unconscionable premium. We are not aware that enforcement of such a provision would violate public policy; perhaps such provisions would encourage settlement of lawsuits.
REVERSED.
GRIFFIN and THOMPSON, JJ., concur.
NOTES
[1] The opinion is unclear as to whether the $100,000 judgment was to be reduced by payments on the $72,000.