**In re WESCOT INTERNATIONAL, INC., Debtor.**

**Christoph Eising, Plaintiff/Respondent,**

**v.**

**Jeffrey Locke, Trustee for the Chapter 7 Estate of Wescot International, Inc.; Susan Vineyard, dba Vineyard Collection Co., Defendants/Appellants.**

Civ. Nos. C 98–4332 SC, C 9–98–0080 SC, C 9–98–0079 SC.
Bankruptcy No. 1–90–01470.
Adversary No. 96–1131.

United States District Court, N.D. California.

July 15, 1999.

William Gwire, Gwire & Frassetto, San Francisco, CA.

Richard Johns, Kipperman & Johns, San Francisco, CA.

## ORDER RE: APPEAL

CONTI, District Judge.

### I. INTRODUCTION

Plaintiff/Appellee Christoph Eising ("Eising") filed a complaint in Bankruptcy Court seeking to set aside a $1 million stipulated judgment entered against him by Defendant/Appellant Jeffrey Locke ("Locke"), for defaulting on a $50,000.00 promissory note. Locke sold the judgment to Defendant/Appellant Susan Vineyard ("Vineyard"), who seeks enforcement. The Bankruptcy Court permanently enjoined enforcement of the $1 million judgment. The Court ruled that Locke is estopped from denying that he had agreed to set aside the $1 million stipulated judgment if Eising satisfied the promissory note. The Court also held that the $1 million judgment amounted to an unconscionable penalty, out of proportion to the original claims. It awarded Vineyard judgment against Eising in an amount representing the money still owing on the $50,000 promissory note. Vineyard appeals to this Court from the judgment of the Bankruptcy Court.

### II. BACKGROUND

Wescot International, Inc. ("Wescot"), filed for bankruptcy in 1990. Appellee Eising is a former principal of Wescot. Appellant Locke is the Chapter 7 trustee of the Wescot estate. Locke brought suit in 1992 against Eising, alleging that he owed approximately $300,000.00 to the estate. Eising disputed this contention, but agreed to settle in order to avoid incurring legal fees.

The settlement provided for Eising to give Locke a promissory note for $50,-000.00. Eising was to make an initial payment of $10,000.00 on or before August 20, 1993, with the balance due monthly in 24 payments, with 8.5% interest. The settlement also provided that, should Eising default, Locke would be entitled to entry of judgment against him in the amount of $1 million. "Default" was defined in the settlement agreement as follows:

> Default shall be deemed to have occurred upon the happening of all the following events: (a) Eising does not timely make a payment required under the note; (b) Trustee, or subsequent holder of the note, has notified Eising by notice delivered to him by certified mail, return receipt requested, that the payment has not been received; and © The overdue payment is not received by Trustee, or subsequent holder of the note, within fifteen (15) days from the date of mailing of the notice.

*Settlement Agreement and Stipulation for Entry of Judgment* at ¶ 6.

In late 1993, after making the initial payment and several monthly payments, Eising missed two payments under the note. He was, however, regularly informing Locke of his efforts to pay. On May 18, 1994, Locke gave Eising official notice that he was in default on his payments due for April and May, 1994, and informed him that the $1 million judgment would be entered against him if failed to cure. Eising failed to cure, and judgment was entered against him on July 22, 1994.

Eising continued to make payments under the note, however, and Locke continued to accept them. On October 20, 1994, Eising offered Locke a cashier's check in an amount sufficient to cure the two month default, on the condition that Locke set aside the one million dollar judgment. Locke refused to set aside the judgment, but did agree not to levy on Eising's property so long as Eising remained current on his payments under the promissory note. The cashier's check remained with Eising's counsel.

Eising continued to make payments on the note until he believed he had completed all the payments. He was mistaken, however, partly because he was unaware that his attorney was still in possession of

the cashier's check, and partly due to miscounting the payments.

Locke and Eising then entered into a compromise to fully resolve the remaining debt. However, creditor Vineyard objected, and offered Locke more money to purchase the judgment.

On April 25, 1996, Eising filed a complaint for declaratory relief, injunctive relief, and a temporary restraining order to block enforcement and to prevent Vineyard's purchase of the judgment. The Court approved Vineyard's purchase of the judgment, and Vineyard now owns it subject to Eising's rights and defenses. Eising then filed a second adversary proceeding to determine those rights.

Following a trial in that proceeding, the Bankruptcy Court found that at least a tacit agreement existed between Locke and Eising that Locke would set aside the judgment upon satisfaction of the note, and that Locke had only refused to set aside the judgment previously in order to facilitate its enforcement. The Court thus found that Locke was estopped from arguing that no such agreement existed. By accepting payments on the note, Locke had led Eising to reasonably believe that the judgment would be set aside upon satisfaction of the promissory note.

Further, the Court found that the $1 million judgment amounted to an unreasonable forfeiture out of proportion to the original obligation. Consequently, it found the judgment an unconscionable penalty, and permanently enjoined enforcement.

The Bankruptcy Court awarded Vineyard judgment against Eising in the amount of $10,332.11, representing the money still owing on the $50,000 promissory note, plus interest at the note rate, plus attorneys' fees, less money Vineyard had already recovered through writs of execution. Appellant Vineyard now appeals to this Court from the judgment of the Bankruptcy Court, seeking enforcement of the $1 million judgment.

## III. STANDARDS OF REVIEW

■ On appeal to a district court, a bankruptcy judge's findings of fact shall not be set aside unless clearly erroneous. Federal Rules of Bankruptcy Procedure, Rule 8013. Conclusions of law are subject to *de novo* review. *In re Bialac*, 712 F.2d 426, 429 (9th Cir.1983).

■ Motions for relief of judgment pursuant to Rule 60(b) are reviewed under an abuse of discretion standard. *Wilson v. City of San Jose*, 111 F.3d 688, 691 (9th Cir.1997). Under that standard, a reviewing court may not reverse unless it has a " 'definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of the relevant factors. A [trial] court may abuse its discretion if it does not apply the correct law or if it rests its decision on a clearly erroneous finding of material fact.' " *Kayes v. Pacific Lumber Co.*, 51 F.3d 1449, 1464 (9th Cir.) *cert. denied*, 516 U.S. 914, 116 S.Ct. 301, 133 L.Ed.2d 206 (1995) (quoting *United States v. Plainbull*, 957 F.2d 724, 725 (9th Cir. 1992)).

## IV. ANALYSIS

### A. Vineyard's Argument that Eising's Claim is Barred

Before this Court can review the substance of the decision of the Bankruptcy Court, it must consider the threshold issue, raised by Vineyard, of whether the Bankruptcy Court could properly entertain this matter in the first place. Vineyard has argued that the Court lacked the power to enjoin enforcement of the stipulated judgment because Eising's claim was barred pursuant to Federal Rule of Civil Procedure 60(b) ("FRCP 60(b)"). FRCP 60(b) provides, *inter alia*, that certain motions for relief from a final judgment may be made no later than one year after entry of judgment; in any case, such a motion

must be made within a "reasonable time." [1] Vineyard argues that the one year jurisdictional bar applies to any claim Eising could have brought in this case, and that no exception applies. Therefore, because judgment was entered against Eising on July 22, 1994, but he did not file this case until April 25, 1996, the Bankruptcy Court should have dismissed the action.

In its judgment, the Bankruptcy Court made the following findings regarding this issue:

1. Eising in entitled to relief pursuant to FRCP 60(b)(3) based on the misconduct of defendant Locke in asking for payments under the note, and accepting such payments, thereby reasonably fostering Eising's belief that he was making payments on his note, not the judgment.

2. Eising is ·entitled to relief pursuant to FRCP 60(b)(3) based on the misconduct of defendant Locke in using the judgment as a "hammer" to induce Eising to honor his note and then, after accepting the note payments, taking the position that the judgment was enforceable.

3. Eising is entitled to relief pursuant to FRCP 60(b)(5), in that it is no longer equitable, based on Locke's conduct, for the judgment to have prospective application.

4. Eising is entitled to relief pursuant to FRCP 60(b)(6) because the amount of the judgment is unreasonable in proportion to his original obligation and the seriousness of the default.

5. Relief is necessary in this adversary proceeding in order to prevent a grave miscarriage of justice. As the court noted in its original findings, enforcement of the judgment represents an unconscionable penalty. Locke elected to use the judgment to force Eising to pay his note. Having obtained the benefit of his tactics, Locke was not free, under any concept of justice, to decide to enforce the judgment anyway.

Supplemental Findings at 1–2.

Thus, the Bankruptcy Court provided four alternative bases for jurisdiction under FRCP 60(b): (1) relief for fraud, misrepresentation, or other misconduct by an adverse party under FRCP 60(b)(3); (2) relief because it is no longer equitable that the judgment should have prospective application pursuant to FRCP 60(b)(5); (3) relief for "any other reason justifying relief from the operation of the judgment" under FRCP 60(b)(6); or (4) relief as an independent action pursuant to the "sav-

---

1. FRCP 60(b) provides as follows:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 28, U.S.C. § 1655, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment · shall be by motion as prescribed in these rules or by an independent action.

Fed.Rule Civ.Pro. 60(b). This rule is applicable to bankruptcy proceedings through Federal Rule of Bankruptcy Procedure 9024, which provides that FRCP 60 applies to cases under the Bankruptcy Code.

ings clause" of Rule 60(b). If any of these bases are valid, it was proper for the Bankruptcy Court to entertain the action before it.

### 1. *Relief Pursuant to FRCP 60(b)(6)*

As noted in note 1 *supra,* Rule 60(b)(6) provides that "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for ... any ... reason justifying relief from the operation of the judgment."

The United States Supreme Court has noted that Rule 60(b)(6) grants federal courts broad authority to relieve a party from a final judgment "upon such terms as are just," provided that the motion is made within a reasonable time and is not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5). *Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 863, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988) (citations omitted).

> The Rule does not particularize the factors that justify relief, but we have previously noted that it provides courts with authority "adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice," while also cautioning that it should only be applied in "extraordinary circumstances."

*Id.* (citations omitted).

■ The Ninth Circuit has noted that "this Rule 'has been used sparingly as an equitable remedy to prevent manifest injustice. The rule is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment.'" *Greenawalt v. Stewart,* 105 F.3d 1268, 1273 (9th Cir.) *cert. denied,* 519 U.S. 1102, 117 S.Ct. 794, 136 L.Ed.2d 735 (1997) (quoting *United States v. Alpine Land & Reservoir Co.,* 984 F.2d 1047, 1049 (9th Cir.), *cert. denied,* 510 U.S. 813, 114 S.Ct. 60, 126 L.Ed.2d 29 (1993)). If a party is

partly to blame for the delay, relief must be sought within one year under subsection (1) and the party's neglect must be excusable. *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership,* 507 U.S. 380, 393, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).

■ Vineyard argues that Eising may not claim relief under subsection (6) because he himself was to blame for the delay, thus subjecting him to the one year limit under subsection (1). In support, Vineyard cites *Schwartz v. United States,* 976 F.2d 213 (4th Cir.), *cert. denied,* 507 U.S. 919, 113 S.Ct. 1280, 122 L.Ed.2d 673 (1993), for the premise that a litigant should not be permitted to use rule 60(b)(6) to seek belated relief when he chose to voluntarily settle rather than appeal a judgment. However, in enforcing the settlement judgment in *Schwartz,* the court relied on the fact that the party's decision to settle rather than appeal was "calculated, free, and deliberate." *Id.* at 218. In contrast, the Bankruptcy Court here found that Eising was induced to refrain from appealing the judgment by Locke's agreement not to enforce the judgment upon payment of the note. Eising reasonably relied on that agreement in deciding not to appeal. Then, when offered more money by Vineyard, Locke rescinded the agreement, forcing Eising to bring the action currently before the Court. Thus, the Bankruptcy Court did not abuse its discretion in determining that Eising was not at fault waiting more than a year before attempting to overturn the judgment.

■ The Bankruptcy Court then determined that Eising is entitled to relief pursuant to FRCP 60(b)(6) because the amount of the judgment is unreasonable in proportion to his original obligation and the seriousness of the default, and results in an unconscionable penalty.[2] The Bank-

---

**2.** This is proper ground for an action under clause (b)(6), as it is not premised on one of the grounds for relief enumerated in clauses

ruptcy Court based this holding, in large part, upon *Sybron Corp. v. Clark Hospital Supply Corp.*, 76 Cal.App.3d 896, 143 Cal. Rptr. 306 (1978).[3] In that case, a debtor had agreed to pay $72,000.00 in 12 payments, but that on default, a judgment could be entered of $100,000.00. After paying $42,000.00, the debtor defaulted, and judgment for $100,000.00 was entered. The trial court refused to set the judgment aside.

The court of appeal reversed, holding that "the equitable powers of the court exist to insure that the ultimate obligation imposed on the debtor is not unreasonable *in proportion* to the original obligation and the seriousness of the default." *Id.* at 903, 143 Cal.Rptr. 306 (emphasis in original). In the case at hand, as the Bankruptcy Court observed, the $1 million judgment

was far more disproportionate to the original obligation and the seriousness of the default than that in the *Sybron* case.

Cases cited by Vineyard in arguing against this conclusion are inapposite. None of them involve such a vast difference between the original claim ($300,000) and the judgment entered ($1 million). Furthermore, the cases agree with *Sybron* in concluding that the payment upon default should be proportional to the original obligation: each of those courts commented that the judgments were enforceable precisely because they bore a *reasonable relation* to the losses the parties agreed might be sustained.[4]

Further, none of them involve similar conduct on the part of the creditor as alleged in this case: here, Locke agreed not to enforce the judgment upon payment

(b)(1) through (b)(5). *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. at 863.

**3.** Vineyard argues first that the Bankruptcy Court's reliance on *Sybron* is improper, because an action under Rule 60 is uniquely a creature of federal law, and therefore the Court is not bound by California law. *Xerox Financial Services Life Ins. Co. v. High Plains Ltd. Partnership*, 44 F.3d 1033, 1040 (1st Cir. 1995). Although this is correct, that same case notes that state law on contracts is very instructive on the precise issue of whether this type of judgment can constitute an unconscionable penalty. *Id.* Vineyard itself acknowledges that there is a dearth of federal law on point, and cites no case from the Ninth Circuit in support of its position. Therefore, it was certainly not improper for the Bankruptcy Court to refer to California law in the case at hand.

**4.** For example, Vineyard cites to *Resolution Trust Corp. v. Avon Center Holdings, Inc.*, 832 P.2d 1073 (Colo.Ct.App.1992). In that case, the complaint originally sought $3.5 million plus interest at 18%, with costs and attorneys' fees. Prior to trial, the parties entered into a stipulation and agreement under which defendant agreed to pay $2 million at 8% interest. If defendant defaulted, plaintiff could obtain judgment for $5.7 million, plus interest at 18%, less amounts previously paid. When the defendant did default, the Colorado Court of Appeals upheld the $5.7 million judgment. In the process, however, the Court noted that "the provision for judgment of the larger sum if the smaller was not paid is not an unen-

forceable penalty because the larger sum *bears a reasonable relation* to the losses the parties considered and agreed might be sustained." *Id.* at 1075.

Vineyard also cites to *Xerox Financial Services Life Insurance Co. v. High Plains Ltd. Partnership*, 44 F.3d 1033 (1st Cir.1995), in which the court upheld enforcement of a $6 million judgment for failure to make a $125,-000.00 payment. However, the *Xerox* Court noted,

This case does not involve in isolation the collection of $6 million for failure to pay a $125,000 debt. Any judgment about disproportion would depend on the reasonable magnitude of all of the claims settled by the May 19 settlement and all of the benefits received by Xerox–VKM. The settlement covered four lawsuits, three projects, and a substantial number of claims and counterclaims. Xerox–VKM may well receive less than it was originally entitled to even if it collects the $6 million in judgments and keeps or collects everything else that it was given or ·promised under the settlement.

*Id.* at 1040.

Similarly, in *Crosby Forrest Products, Inc. v. Byers*, 623 So.2d 565 (Fla.Dist.Ct.App.1993), the original claim was for $90,000.00; the settlement agreement was for $80,000.00; and the judgment in case of default was for $94,000.00 less payments already made. The *Crosby* Court noted that "the larger amount payable upon default represents a legitimate amount as reflected by the record." *Id.* at 567.

of the note, inducing Eising in reasonable reliance upon that agreement not to take immediate legal action to modify or overturn the judgment. Then, when offered more money by Vineyard, Locke rescinded that agreement, forcing Eising to bring the action currently before the Court.[5]

Based upon the above, the Court holds that the Bankruptcy Court did not abuse its discretion in enjoining enforcement of the $1 million judgment pursuant to Rule 60(b)(6). Because of this, the Court need not discuss the alternative bases for the Bankruptcy Court's decision.

## V. CONCLUSION

For the foregoing reasons, the appeal of Susan Vineyard is hereby DENIED, and the judgment of the Bankruptcy Court is AFFIRMED.

IT IS SO ORDERED.

---

5. In the *Crosby* case referred to in note 4 *supra*, the court specifically observed that enforcement of the $94,000.00 judgment was permissible *"where it is not a subterfuge for usury or an unconscionable premium."* *Crosby*, 623 So.2d at 567 (emphasis added). In contrast, the case before this Court appears to constitute precisely a "subterfuge for usury."