Filed 7/21/16  Legado Companies v. Jones CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| LEGADO COMPANIES et al., | B264248 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC492204) |
| v. | |
| DEREK JONES et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michelle R. Rosenblatt, Judge.  Affirmed.

Alston & Bird, G. Christian Roux, Jesse M. Jauregui and Jacob A. Dean for Plaintiffs and Respondents.

Derek J. Jones in pro. per for Defendants and Appellants.

## INTRODUCTION

Derek Jones and Derek Jones PLC (collectively, Jones) appeal a judgment entered after Jones defaulted in making payments under a settlement agreement. The sole issue in this appeal is whether a portion of the settlement constitutes unenforceable liquidated damages.

Jones and respondents Legado Companies and Edward M. Czuker (collectively, Legado) entered into a settlement agreement providing that Jones would pay Legado $2.4 million. However, Legado agreed to accept $2 million as satisfaction of the debt if Jones made timely payments as required by the settlement agreement. When Jones failed to do so, Legado sought a default judgment for the full $2.4 million, minus the amount Jones already had paid. Jones argued that the parties actually agreed to settle their dispute for $2 million and the additional $400,000 was only owed as liquidated damages in the event of a default. He further contended that this liquidated damages amount was unenforceable. The trial court found that the parties agreed to a total settlement of $2.4 million, as reflected in their agreement, and that the $400,000 discount was a negotiated benefit, and not an unenforceable penalty. We conclude that this factual determination was supported by substantial evidence, and accordingly affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Complaint

Legado Companies is a commercial real estate development company specializing in mixed-use projects in southern California. Czuker is the Chief Executive Officer of Legado. Appellant Derek Jones, an attorney, was employed by Legado as in-house counsel from approximately November 2007 to August 2012 through his law firm Derek Jones, PLC.

Legado filed a complaint against Jones[1] on September 14, 2012. Legado alleged that Jones was principally responsible for overseeing the development of a mixed-use real estate project to be built on land owned by Ventura County. However, in July 2012, the

---

[1] The complaint also named as defendants other individuals and entities that are not parties to this appeal.

2

county terminated the project because Legado had not executed the development in a timely manner. Legado alleged that, upon further inquiry, it learned Jones had materially misrepresented the status of the progress of this project, as well as the status of entitlements and permits on other Legado projects. As a result of these discoveries, Legado terminated Jones's employment in August 2012. Legado's complaint also alleged additional fraudulent conduct by Jones, which it discovered subsequent to his termination.

Legado's complaint against Jones asserted nineteen causes of action, including claims for fraud, legal malpractice, breach of fiduciary duty, conversion, and intentional interference with prospective business advantage. Legado filed a second and third amended complaint; the third amended complaint was the operative pleading at the time of the parties' settlement. Jones filed a cross-complaint against Legado in September 2013.

## B. Settlement Agreement

The parties settled all claims pursuant to a settlement agreement executed on May 22, 2014. The agreement provided that "Jones on behalf of himself and all Defendants, will pay Legado Companies and Edward Czuker the sum of $2,400,000 (Two Million Four Hundred Thousand Dollars) in settlement" in exchange for a mutual release and a dismissal of all claims. The agreement set forth a schedule with varying installment amounts to be paid between July 1, 2014 and December 31, 2015. It further provided that "so long as all payments are timely made in accordance with the following schedule . . . the amount due shall be discounted to $2,000,000."

Under the agreement, Jones also executed a stipulation for entry of judgment (attached to the agreement as Exhibit A), which Legado could file by ex parte application in the event that Jones "defaults in making payments pursuant to the terms and conditions set forth in the Agreement, and said default has not been cured within the time required by Plaintiffs' notice of default." The stipulation for entry of judgment, as well as the stipulated judgment itself (also approved in substance by Jones as attached to the settlement agreement), both stated that in the event of a default, the parties agreed to

3

entry of judgment in favor of Legado and against Jones "in the amount of TWO MILLION FOUR HUNDRED THOUSAND DOLLARS ($2,400,000), minus any credits for payments made prior to any uncured default."

Pursuant to the terms of the settlement agreement, the court dismissed the complaint and cross-complaint on July 3, 2014, retaining jurisdiction to resolve any disputes arising under the settlement agreement or to enforce the terms of the agreement pursuant to Code of Civil Procedure section 664.6.[2]

## C.     Jones's Default

Between July and December 2014, Jones failed to make any payments in accordance with the agreement's payment schedule. On each occasion, Jones and Legado negotiated an extension of time to make the payments in return for separate consideration paid to Legado, and amended the settlement agreement accordingly. During this time, Jones made payments totaling $870,000 under the agreement. Pursuant to the fifth payment extension, Jones was required to make a payment to Legado of $450,000 on or before November 30, 2014. When he failed to do so, Legado filed an ex parte application on December 4, 2014 to enter the stipulated judgment.

## D.     Entry of Judgment

In support of its ex parte application, Legado provided evidence of the parties' agreement, the payment extensions, and Jones's failure to make all payments. In his opposition to the ex parte application, Jones did not dispute that he had failed to timely pay the installments under the settlement agreement, including the most recent payment due on November 30, 2014. Instead, Jones claimed that Legado had unreasonably refused his latest request for an extension and had otherwise "insisted on a number of

_____

[2] Section 664.6 provides: "If the parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement."

4

extortionate and unreasonable terms" in negotiating the prior extensions. Jones did not dispute the terms of the agreement or the settlement amount of $2.4 million.

At the hearing on the ex parte application on December 4, 2014, counsel for Jones noted "some discrepancies with respect to the calculations" regarding the amount owed under the settlement agreement, but did not otherwise challenge the total amount under the agreement. The court took the matter under submission and ordered further briefing regarding Jones' position "disputing the amount of the Proposed Stipulated Judgment."

Jones filed his supplemental brief on December 14, 2014, arguing for the first time that the parties had agreed to settle the case for $2 million and the additional $400,000 claimed by Legado was a "liquidated damages clause" in the event of late payment. Jones argued that this $400,000 was an unenforceable penalty and that therefore the court should credit the settlement payments made by him against $2 million as the principal, rather than $2.4 million. In his accompanying declaration, Jones stated that he entered into the settlement agreement, under which he "agreed to make several installment payments . . . totaling $2,000,000 by the end of 2015." His declaration did not otherwise address his contention that the $400,000 was a penalty rather than a discount.

In its reply, Legado asserted that during the negotiation of the settlement, Jones proposed the installment payment schedule and requested that the total settlement amount be discounted from $2.4 million to $2 million if he paid on time. Czuker submitted a declaration stating that he had been "absolutely clear with Mr. Jones that the settlement amount was $2,400,000. We never discussed that any part of the $2,400,000 settlement number included any penalty for Jones' failure to pay."

The court issued its written order on December 26, 2014, finding that "the original settlement agreement is enforceable as a judgment, was negotiated at arm's length and is not unconscionable." The court further found "the discounted principal of $2,000,000 (two million dollars) from the total principal of $2,400,000 (two million four hundred thousand dollars) was a negotiated benefit to be conferred for early or on time payment," and therefore, that "$400,000 was not an unenforceable penalty as a matter of law." Accordingly, the court concluded that Jones was entitled to receive $870,000 in credit

5

(reflecting payments made by Jones prior to his default) against the $2.4 million settlement amount. On March 23, 2015, the court entered Judgment in Legado's favor in the amount of $1,530,000 ($2.4 million minus $870,000 paid), plus $12,000 attorneys' fees against Jones. Jones timely appealed.

## DISCUSSION

### A. Standard of Review

This appeal follows the lower court's enforcement of the settlement agreement pursuant to Code of Civil Procedure section 664.6. When ruling on a motion to enforce a settlement agreement pursuant to this section, "the trial court must determine whether the parties entered into a valid and binding settlement of all or part of the case." (*Corkland v. Boscoe* (1984) 156 Cal.App.3d 989, 994.) "The proper standard of review, therefore, is whether the trial court's ruling was supported by substantial evidence. (See, e.g., *Casa de Valley View Owner's Assn. v. Stevenson* (1985) 167 Cal.App.3d 1182, 1190.)" (*Fiore v. Alvord*, (1985) 182 Cal.App.3d 561, 565.)

### B. The Plain Terms of the Agreement Provide for a $400,000 Discount

Jones contends that the trial court erred in entering the stipulated judgment using $2.4 million as the total settlement amount. He contends that $400,000 of that total was an unenforceable penalty barred by Civil Code section 1671.[3] Under that section, "a provision in a contract liquidating damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made." (§1671, subd. (b).) A liquidated damages clause will generally be considered unreasonable, and hence unenforceable under section 1671, if it "bears no reasonable relationship to the range of actual damages that the parties could have anticipated would flow from a breach." (*Ridgley v. Topa Thrift & Loan Assn.* (1998) 17 Cal.4th 970, 977.) Thus, according to Jones, the contract provision reducing the settlement amount by $400,000 for timely payment is effectively a liquidated damages provision adding

---

[3] All further statutory references are to the Civil Code unless otherwise indicated.

6

$400,000 in the event he failed to pay on time and is therefore unenforceable because it bears no reasonable relationship to the damages the parties could have anticipated would result from a breach of the settlement agreement. The threshold question, therefore, is whether this provision constitutes a discount or liquidated damages.

The statutory rules of contract interpretation dictate that the mutual intention of the parties at the time the contract is formed governs interpretation. (§ 1636; *AIU Ins. Co. v. Superior* Court (1990) 51 Cal.3d 807, 821-822 (*AIU*).) In determining this intent, a court must first look to the language of the contract in order to ascertain its plain meaning. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18.) Courts are required to consider "[t]he 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage.'" (*AIU*, *supra*, 51 Cal.3d at p. 822.)

The court in *Jade Fashion & Co. v. Harkham Industries, Inc.* (2014) 229 Cal.App.4th 635, 649 (*Jade)* addressed the same issue that is presented here. Jade Fashion contracted to sell garments to Harkham Industries, which eventually fell behind on its payment obligations. (*Id.* at p. 639.) The parties entered into a written agreement outlining a payment schedule which provided that if Harkham made its payments on time, the original debt would be discounted by $17,500 from the total amount owed. (*Ibid*.) Although the installments were paid, some payments were not timely. (*Id.* at p. 640.) Jade refused to apply the discount and ultimately sued Harkham for the balance owed. (*Ibid*.) On appeal, Harkham made the same argument Jones presents here: that the $17,500 discount actually constituted an unlawful penalty under section 1671. (*Id.* at pp. 645-646.) Division Seven of this District affirmed the trial court's conclusion that the discount was not available because of Harkham's late payments. (*Id.* at pp. 642, 648-649.) The express language of the agreement established that "the $17,500 discount was not liquidated damages for a breach of contract, nor was it an additional payment over and above any debt that was owed." (*Id.* at p. 649.) Instead, "the $17,500 was part of the $341,628.77 debt which Harkham Industries specifically admitted it owed to Jade Fashion in both the Agreement and the continuing guaranty." (*Ibid.*)

7

Similarly, here, the express terms of the parties' settlement agreement provide that the total obligation amount agreed upon was $2.4 million. Paragraph 3 of the settlement agreement provides that "Jones . . will pay Legado Companies and Edward Czuker the sum of $2,400,000 (Two Million Four Hundred Thousand Dollars) in settlement." The Stipulation for Entry of Judgment states that Jones "has agreed to pay Plaintiffs the sum of Two Million Four Hundred Thousand Dollars ($2,400,000) over a period of time . . ." This clear and explicit language mandates the conclusion that the settlement obligation was for $2.4 million.

Nor is there any language in the agreement suggesting that the $400,000 was a punishment or penalty, as Jones now claims.[4] The agreement provides that "so long as all payments are timely made in accordance with the following schedule . . . the [settlement] amount shall be discounted to $2,000,000 (Two Million Dollars) . . ." The express language of the agreement accordingly establishes that the $400,000 discount was not liquidated damages for a breach of contract, nor was it an additional payment over and above any debt that was owed. Instead, the $400,000 was *part* of the $2.4 million obligation which Jones agreed he owed Legado in both the settlement agreement and the stipulation for entry of judgment. The negotiated discount was a potential *benefit* that Jones could receive if all payments were timely made. Because Jones failed to do so, he remained liable to Legado for the full amount of the $2.4 million debt.

Jones' attempts to distinguish *Jade* are unconvincing. Jones highlights several factual differences between *Jade* and the instant case, none of which is dispositive to the court's conclusion that the provision was a discount rather than a penalty. Jones first suggests that the court's reasoning hinged on the fact that the agreement in *Jade* was reached pre-litigation and was an agreement to forebear on the collection of a debt rather that an agreement to settle a disputed claim. However, the court in *Jade* did not rely on

---

[4] We also note that while Jones argues that the discount provision was intended to be a penalty for late payment, he failed to present any evidence to support that suggestion. His own declaration merely echoes the agreement to pay the discounted amount of $2,000,000 in installment payments over two years.

this fact; instead, the court emphasized that the dispositive factor was that the agreement did not impose additional, punitive damages in the event of a breach.  (*Jade*, *supra*, 229 Cal.App.4th at pp. 647-649.)  Jones further notes that in *Jade* the debtors' obligation was for an amount tied exactly to a fixed cost of goods.  But the crucial issue was whether the amount of the debt obligation was fixed.  As the court in *Jade* observed, "the contract at issue here expressly obligated Harkham Industries to pay off the entirety of the original debt. . . .  Because Harkham Industries failed to fully perform under the Agreement . . . it remained liable to Jade Fashion for the full amount of its . . . debt."
(*Id.* at p. 651.)  Like the parties in *Jade*, Jones and Legado entered into a settlement agreement that obligated Jones to pay a fixed amount.  When Jones failed to perform under the agreement, he remained liable to Legado for the full amount of the settlement.  Finally, Jones suggests that the $400,000 he is required to pay is disproportionate to the total amount owed, whereas in *Jade* the amount of $17,500 represented only 5% of the total debt.  Again, this fact is not dispositive.  In *Jade* the enforceability of the $17,500 discount provision did not depend on whether it bore a reasonable relationship to the actual damages suffered from the late payments because the court determined that it could not be characterized as a penalty.  We reach the same conclusion here.

In support of his argument that the $400,000 was actually an unlawful penalty disguised as a discount, Jones relies (as did the appellant in *Jade*) on three decisions—*Sybron Corp. v. Clark Hosp. Supply Corp.* (1978) 76 Cal.App.3d 896, *Greentree Financial Group, Inc. v. Execute Sports, Inc.* (2008) 163 Cal.App.4th 495, and *Purcell v. Schweitzer* (2014) 224 Cal.App.4th 969 (*Purcell*). (See *Jade*, *supra*, 229 Cal.App.4th at pp. 646-647.)  However, in each of these cases, the parties had negotiated settlement agreements requiring defendants to pay a fixed amount of *additional damages* above the settlement amount in the event of a breach.  Those additional damages were found to be disproportionately higher than the settlement amount.  (See *Sybron*, *supra*, 76 Cal.App.3d at p. 898-900; *Greentree*, *supra*, 163 Cal.App.4th at pp. 498-500; *Purcell*, *supra*, 224 Cal.App.4th at pp. 971-972, 975.)  As the court did in *Jade*, we conclude that these cases are therefore factually distinguishable from the circumstances presented here.

9

For example, in *Purcell* the plaintiff defaulted on an $85,000 loan given by the defendant lender. (*Purcell*, *supra*, 224 Cal.App.4th at p. 971.) The parties entered into a settlement agreement under which the borrower would pay the lender $38,000, plus 8.5 percent interest, in installments over 24 months. (*Ibid*.) The agreement further provided that if payment was not made on time it would be considered a breach of the entire settlement agreement, and the original liability of $85,000 would be due. (*Ibid*.) The borrower was late on a payment, and the lender was granted a default judgment in the amount of $58,829.35. (*Ibid*.) Though the agreement also specified that this provision did not constitute an unlawful "penalty" or "forfeiture," the court set aside the default judgment, finding that it constituted an unenforceable penalty because the amount of the judgment bore no reasonable relationship to the amount of damages the lender would actually suffer as a result of the borrower's breach. (*Ibid*.) The appellate court affirmed, emphasizing that the penalty was unenforceable because it greatly exceeded the amount of the underlying settlement. (See *Id.* at p. 975.)

Here, the default judgment was for the amount agreed to by both parties in the underlying settlement. The parties expressly agreed that Jones owed Legado the balance of $2.4 million – the agreement did not purport to increase the amount of the original debt owed by Jones if any payments were late. We agree with the court in *Jade* that "parties to a contract may not circumvent the public policies embodied in section 1671 merely by labeling a penalty a discount." (*Jade*, *supra*, 229 Cal.App.4th at p.650.) However, the plain language of the agreement does not support a finding that Legado intended to penalize Jones by agreeing to forbear on collection of the full amount of the settlement agreement as long as Jones continued to make timely payments. Thus, under these circumstances, "section 1671's restriction on liquidated damages clauses does not apply, and the enforceability of the [$400,000] discount provision does not depend on whether it bore a reasonable relationship to the actual damages suffered from the late payments." (*Jade*, *supra*, 229 Cal.App.4th at p. 649.) Thus, we conclude that the lower court's determination that the $400,000 discount provision was not a penalty is supported by substantial evidence.

10

**DISPOSITION**

The judgment is affirmed.  Respondents are awarded their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.

We concur:


EPSTEIN, P. J.


WILLHITE, J.